Rhonda MORRIS and Michael Morris, Plaintiffs,

v.

Gabriel SANCHEZ, M.D., Defendant.

Kathy STOUT and Jay Stout, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. 63675, 63768.

Supreme Court of Oklahoma.

Nov. 10, 1987.

As Corrected Nov. 17, 1987.

Duke Halley, Woodward, for plaintiffs Morris.

Pierce, Couch, Hendrickson, Johnston & Baysinger by Calvin W. Hendrickson, and John M. Perry, III, Oklahoma City, for defendant Sanchez.

Boettcher, Leonard & Brune by H. Thomas Leonard, Ponca City, for plaintiffs Stout.

Layn R. Phillips, U.S. Atty., Nancy Nesbitt Blevins, Asst. U.S. Atty., Tulsa, for defendant U.S.

LAVENDER, Justice.

The United States District Courts for the Northern and Western Districts of Oklahoma certified similar questions of law to this Court under the Uniform Certification of Questions of Law Act, 20 O.S. 1981 §§ 1601 through 1612. Upon the request of the certifying courts this Court has granted a consolidation of these matters and the Federal District Courts have submitted a unified set of questions to be addressed. The parties to the actions in the federal courts have filed briefs setting forth their positions on these questions. The questions presented for consideration are:

1. In a medical malpractice action against a physician concerning a failed sterilization procedure which resulted in the birth of a healthy child, may a patient recover as an element of damages the cost of rearing the child?

2. If the answer to question No. 1 is affirmative, may the finder of fact consider the love and affection and/or benefits due to the child's services the parents may receive from the child as factors which mitigate the loss caused by the financial burden of rearing the child?

3. In the event of a conception, do the plaintiff or plaintiffs have a duty to mitigate damages such as by obtaining a timely abortion or by attempting to place the child for adoption?

The certified facts accompanying the propounded questions indicate that the female plaintiffs in both cases sought to be sterilized through medical procedures. In the Morris case the procedure utilized was a tubal ligation in which the plaintiff's fallopian tubes were surgically cut. Plaintiff Stout sought a laparoscopic falope ring application in which the fallopian tubes are sealed by the application of a ring to block the passage to the uterus. Plaintiffs in both cases now contend that these procedures were negligently performed, and, as a result of this negligence, neither was truly sterilized. Both women subsequently became pregnant and both have given birth to healthy female children.

I.

One of the elements of the damages for which both sets of plaintiffs seek recovery is the costs of rearing the children born to them following the attempted sterilizations. The first two questions presented in this certification concern whether this element of damages is recoverable in this jurisdiction and whether, if recoverable, the costs of rearing are to be offset by the benefits to the parents from the birth of the child. Of necessity, we consider these questions together.

Although courts[1] have spoken in absolute terms of allowing the costs of raising a child as a recoverable element of damages in a medical malpractice action for negligent sterilization, we find no support for the proposition that a full recovery for such costs should be allowed without offsets for the benefits conferred.[2] There thus appear to be two divergent lines of authority governing recoverable damages in this type of action. As this jurisdiction has not addressed this issue previously, it is now incumbent upon us to determine the limits of this cause of action.

The right to refrain from procreation through use of contraception and thus to plan one's family, or to abstain from having children altogether through the use of sterilization, is a right recognized to be of Constitutional dimensions.[3] Where the exercise of this right is interfered with as a result of the negligent performance of a

1. E.g. *Custodio v. Bauer*, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967); *Bowman v. Davis*, 48 Ohio St.2d 41, 356 N.E.2d 496 (1976).

2. *Stills v. Gratton*, 55 Cal.App.3d 698, 127 Cal. Rptr. 652 (1976), states that *Custodio*, supra note 1, stands for the proposition that costs of raising a child are recoverable, but that offsets for benefits conferred may also be proven.

*Bowman v. Davis*, supra note 1, states in footnote one of the opinion that the issue of damages was not before the court and not decided in the opinion.

3. See *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

physician in an attempted sterilization procedure, it is clear that a cause of action exists to recover for the detriment [4] resulting from such negligence. The measure of detriment flowing from the existence of the cause of action is, on the other hand, an area considerably occluded by conflicting considerations of vital importance.

A minority of jurisdictions having considered this point have stated that the question of detriment should be addressed strictly as an issue under traditional tort law.[5] Under this view the birth of the child proximately results from the tortfeasor's negligence and the costs of raising the child should be considered as an element of damages. These courts further allow the benefits derived from the unintentional parenthood to be considered as an offset to the detriment claimed to have been incurred.[6]

The apparent rationale for this allowance of rearing costs, with an offset for benefits received, lies in the coupling of the concept that one who is injured by the wrongful act of another should be fully compensated for the results of that wrongful act, with the principle that any benefit conferred by the wrongful act should be allowed as an offset against the recovery.[7] This application of the offset of benefits rule, founded as it is in the Restatement (Second) of Torts,[8] has been subject to criticism for its failure to literally comply with the provision of the rule limiting the offset to benefits conferred on the interest of the plaintiff for which he claims harm.[9] Under this analysis only the monetary benefits flowing from the birth of the unplanned child could be used to offset the monetary detriment flowing from the costs of raising the child.[10]

The strict application of section 920 [11] has been rejected, however, on the ground that the provision is essentially rooted in

**4.** 23 O.S. 1981 § 61, provides:

For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.

**5.** *University of Arizona v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983); *Stills v. Gratton,* supra note 3; *Ochs v. Borrelli,* 187 Conn. 253, 445 A.2d 883 (1982); *Jones v. Malinowski,* 299 Md. 257, 473 A.2d 429 (1984); *Troppi v. Scarf,* 31 Mich.App. 240, 187 N.W.2d 511 (1971); *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169 (Minn. 1977).

**6.** *Univ. of Ariz. v. Superior Court,* supra note 7, *Stills v. Gratton,* supra note 3, and *Troppi v. Scarf,* supra note 7, indicate that the benefits derived from the unplanned birth should be considered as offsetting all the items of damages claimed in the action. *Ochs v. Borrelli,* supra note 7, *Jones v. Malinowski,* supra note 7, and *Sherlock v. Stillwater Clinic,* supra note 7, indicate that the offset of benefits from the birth of the unplanned child should only be applied against the costs of raising the child.

**7.** RESTATEMENT (SECOND) OF TORTS § 920 (1977), states:

When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.

**8.** Id.

**9.** See, e.g., Comment, *Liability for Failure of Birth Control Methods,* 76 Colum L.Rev. 1187 (1976); Note, *Wrongful Conception: Who Pays for Bringing Up Baby?,* 47 Fordham L.Rev. 418 (1978); Note, *Recovery for Wrongful Conception: Who Gets the Benefit—The Parents or the Public?,* 14 New Eng.L.Rev. 784 (1979); Holt, *Wrongful Pregnancy,* 33 S.Caro.L.Rev. 759 (1982); Note, *Judicial Limitations on Damages Recoverable for the Wrongful Birth of a Healthy Infant,* 68 Va.L.Rev. 1311 (1982).

**10.** RESTATEMENT (SECOND) OF TORTS § 920 (1977), Comment b, states:

Damages resulting from an invasion of one interest are not diminished by showing that another interest has been benefited. Thus one who has harmed another's reputation by defamatory statements cannot show in mitigation of damages that the other has been financially benefited from their publication (see Illustration 4), unless damages are claimed for harm to pecuniary interests. (See Illustration 5). Damages for pain and suffering are not diminished by showing that the earning capacity of the plaintiff has bveen increased by the defendant's act. (See Illustration 6). Damages to a husband for loss of consortium are not diminished by the fact that the husband is no longer under the expense of supporting the wife.

**11.** Supra note 9.

the concept of preventing unjust enrichment.[12] It has been reasoned that:[13]

The major difficulty in applying the "benefit" rule is that comment 6 [sic] to Section 920 of the Restatement indicates that benefits to one type of interest may not offset damages to another type of interest. Nevertheless, the benefit rule is rooted in the equitable principle of unjust enrichment. See *Sherlock v. Stillwater Clinic*, 260 N.W.2d at 176. In a cause of action for "wrongful pregnancy," it would be unfair and would result in unjust enrichment to strictly apply the "same interest" limitation. Since the economic burden and emotional distress of rearing an unexpected child are inextricably related to each other, I would hold that the reasonable costs of rearing a child may be offset by the value of the economic and emotional benefits conferred on the parents by a child. See *Troppi v. Scarf* 31 Mich.App. at 258, 187 N.W.2d at 518. *Accord, Sherlock v. Stillwater Clinic*, 260 N.W.2d at 176....

The application of this approach has allowed the jurisdictions allowing the recovery of the costs of rearing an unplanned child as an item of damages in a medical malpractice action for negligent sterilization to offset that recovery by the value of the intangible benefits of parenthood.[14]

It is argued that this approach, allowing full recovery of all items of damages accompanying the unwanted pregnancy, including the costs of raising the unplanned child, combined with the application of the offsetting benefits rule, as tailored to meet the peculiar circumstances underlying such a cause of action as we face here, furthers the basic principle of tort law; that the tort-feasor must be held responsible for all the detriment flowing from his tortious act. Yet, as attractive as this argument seems on the surface, it remains a minority viewpoint.

The majority of jurisdictions having considered this matter have concluded that, as a matter of law, the costs of raising the unplanned child may not be recovered in a medical malpractice action for negligent sterilization.[15] The reasons given for this determination have ranged from elaborate to extremely simple. Our examinations of those various reasons find them to be compelling. One thread connects the reasoning common to all these cases. That thread is the sanctity which must be placed on human life.

If, as those jurisdictions allowing recovery for costs of raising an unplanned child agree, the benefits flowing from the life of an unplanned child must be allowed as an offset to the costs of raising the child, would we not then be required to allow, as an offset to the benefits from the life of a child recoverable as damages in a wrongful death action,[16] the costs of raising the child

12. *Univ. of Ariz. v. Superior Court*, 667 P.2d at 1299 (footnote four of the opinion).

13. *Boone v. Mullendore*, 416 So.2d 718, 726 (Ala. 1982) (Faulkner, J., specially concurring opinion).

14. *Univ. of Ariz. v. Superior Court*, 667 P.2d at 1299; *Ochs v. Borrelli*, 445 A.2d at 886; *Jones v. Malinowski*, 473 A.2d at 436, 437; *Troppi v. Scarf*, 187 N.W.2d at 518; *Sherlock v. Stillwater Clinic*, 260 N.W.2d at 176.

15. *Boone v. Mullendore*, 416 So.2d 718, 726 (Ala. 1982); *Wilbur v. Kerr*, 275 Ark. 239, 628 S.W.2d 568 (1982); *Coleman v. Garrison*, 349 A.2d 8 (Del.1975); *Flowers v. District of Columbia*, 478 A.2d 1073 (D.C.1984); *Fassoulas v. Ramey*, 450 So.2d 822 (Fla.1984); *Fulton–Dealb Hospital Authority v. Graves*, 252 Ga. 441, 314 S.E.2d 653 (1984); *Cockrum v. Baumgartner*, 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385 (1983), cert. den. 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139; *Nanke v. Napier*, 346 N.W.2d 520 (Iowa 1984);

*Byrd v. Wesley Medical Center*, 237 Kan. 215, 699 P.2d 459 (1985); *Schork v. Huber*, 648 S.W. 2d 861 (Ky.1983); *Kingsbury v. Smith*, 122 N.H. 237, 442 A.2d 1003 (1982); *O'Toole v. Greenberg*, 64 N.Y.2d 427, 488 N.Y.S.2d 143, 477 N.E.2d 445 (1985); *Weintraub v. Brown*, 98 A.D.2d 339, 470 N.Y.S.2d 634 (1983); *Mason v. Western Pennsylvania Hospital*, 499 Pa. 484, 453 A.2d 974 (1982); *Terrell v. Garcia*, 496 S.W.2d 124 (Tex.Civ.App. 1973), cert. den. 425 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484; *Rieck v. Medical Protective Co.*, 64 Wis.2d 514, 219 N.W.2d 242 (1974); *Beardsley v. Wierdsma*, 650 P.2d 288 (Wyo.1982).

16. 12 O.S. 1981 § 1055, provides:

In all actions hereinafter brought to recover damages for the death of an unmarried, unemancipated minor child, the damages recoverable shall include medical and burial expense, loss of anticipated services and support, loss of companionship and love of the child, destruction of parent-child relationship and loss of monies expended by parents or guardian in sup-

which will not be incurred because of the child's death? Would we not then be faced with the necessity of considering the death of the child in terms of the benefit bestowed upon the parents? This, in essence, is the heart of the matter before us. To consider the costs of raising an unplanned child as an element of damages incurred, we are required to embrace the logical conclusion that the nonexistence of that child would be a benefit. This we cannot do.

For this reason, we join in the view expressed by the Supreme Court of our sister state of Kansas:[17]

> Having considered the three views and the arguments advanced in support of each of them, we conclude that the majority rule should apply in this jurisdiction and we adopt it. In a medical malpractice action for negligent sterilization, the projected cost of rearing a normal, healthy child to majority may not be recovered.
>
> As a matter of public policy, the birth of a normal and healthy child does not constitute a legal harm for which damages are recoverable. We recognize wrongful death actions because of the great value we place on human life. Conversely, we cannot recognize actions for wrongful birth or wrongful conception of a normal, healthy child. The birth of a normal, healthy child may be one of the consequences of a negligently performed sterilization, but we hold that it is not a legal wrong for which damages should or may be awarded.
>
> We agree with the rationale of the New York Supreme Court, Appellate Division, as expressed in *Weintraub v. Brown*, 98 App.Div.2d 339, 348-49, 470 N.Y.S.2d 634 (1983):
>
> "We have carefully considered the competing legal and ethical viewpoints expressed in this nettlesome area of the law, viewpoints which challenge the fundamental assumptions of our legal system and values. We conclude, as has the majority of the jurisdictions which have decided the issue, that denial of ordinary child rearing costs in wrongful pregnancy actions is to be preferred. As a matter of public policy we are unable to hold that the birth of an unwanted but otherwise healthy and normal child constitutes an injury to the child's parents and is, therefore, compensable in a medical malpractice action. Such a holding would be incompatible with contemporary views concerning one of life's most precious gifts—the birth of a normal and healthy child. We are loath to adopt a rule, the primary effect of which is to encourage, indeed reward, the parents' disparagement or outright denial of the value of their child's life. While we attempt not to adjudicate cases which come before us on the basis of emotion, sentiment, or personal preferences, a proper respect for the value of life—a cornerstone of our legal system—does not run counter to this principle. Accordingly, we affirm that part of the order under review which dismisses so much of the second cause of action as seeks to recover ordinary child rearing costs."

Many other reasons for the adoption of the majority rule are stated in the cited cases, but we need not base our opinion upon them. We hold simply that under the public policy of this state, a parent cannot be said to be damaged by the birth of a normal, healthy child, and the parent may not recover damages because of the birth of such a child.

### II.

The third question presented to us in this certification queries whether the plaintiff parents in a medical malpractice action for negligent sterilization have a duty to mitigate their damages through resort to abortion, or through putting the unplanned child up for adoption. As we have held as a matter of public policy that the costs associated with the life of the

port, maintenance and education of such minor child, in such amount as, under all circumstances of the case, may be just.

17. *Byrd v. Wesley Medical Center,* 699 P.2d at 467, 468 (1985).

child are not an element of damages recoverable in such an action, we need not reach this question as there would be no cognizable harm coming from the life of that child which would necessarily require mitigation.[18]

We also note that, under Oklahoma law, one is only required to take reasonable actions in mitigation of damages.[19] In this regard we concur with those jurisdictions which have reached the question as a necessary concomitant of allowing the costs of raising an unplanned child as an element of damages, and have held that the concept of requiring abortion or adoption under these circumstances is, as a matter of law, unreasonable.[20]

## III.

Our answers to the questions presented by the United States District Courts for the Northern and Western Districts of Oklahoma are thus:

1. A plaintiff or plaintiffs in a medical malpractice action for negligent sterilization may not recover the costs of raising a healthy normal, but unplanned child as an element of damages.

2. As the answer to the first question is negative we need not specifically address the second question.

3. As we have found that the plaintiff parents in a medical malpractice action for negligent sterilization suffer no legally cognizable harm as a result of the life of the unplanned child, they are under no legal obligation to dispose of that life. Further, the concept of disposal of that life would be, as a matter of law, unreasonable as an action in mitigation of damages in this context.

---

**18.** *O'Toole v. Greenberg,* 477 N.E.2d at 448 (footnote six of that opinion).

**19.** See *Smith–Horton Drilling Co. v. Brooks,* 199 Okla. 63, 182 P.2d 499 (1947); *Sackett v. Rose,* 55 Okla. 398, 154 P. 1177 (1916).

**20.** *Univ. of Ariz. v. Superior Court,* supra note 7; *Jones v. Malinowski,* supra note 7; *Troppi v. Scarf,* supra note 7; *Sherlock v. Stillwater Clin-*

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, ALMA WILSON and SUMMERS, JJ., concur.

HODGES, J., joined by SIMMS, J., concurs in part, dissents in part.

OPALA, J., joined by KAUGER, J., concurs in part, dissents in part.

HODGES, Justice, concurring in part and dissenting in part, joined by SIMMS, Justice.

I concur in the Court's conclusion that a plaintiff in a medical malpractice action for a failed sterilization may not recover the costs of raising the unplanned child as an element of damages. I disagree, however, with the Court's determination that there is a cause of action for a failed sterilization which results in the birth of a normal, healthy child. Because I would not recognize the tort of a failed sterilization, I respectfully dissent.

In my view, the birth of a healthy, albeit unwanted child, is not a wrong even if negligent conduct contributed to the eventual birth. Where is the injury and resulting damages in the birth of a normal, healthy child? I find none. And if there are some, I would not want to speculate. For it would appear to me, the future benefits these parents will later receive from this child will far exceed their present imaginary damages. The birth of a normal, healthy child is a blissful, not an injurious or damaging event.

I would adopt the minority position as espoused by the Nevada Supreme Court in *Szekeres By Szekeres v. Robinson,* 715 P.2d 1076 (Nev.1986). This court held a negligence action may not be maintained unless one has suffered injury or damage, and the birth of a normal, healthy child is not legal compensable damages in tort.

---

*ic,* supra note 7. And see *Flowers v. Dist. of Columbia,* supra note 17 (Ferren, J., dissenting opinion); *Fassoulas v. Ramey,* supra note 17 (Erlich, J., dissenting). And see also *Ziemba v. Sternberg,* 45 A.D.2d 230, 357 N.Y.S.2d 265, 269 (1974), "The right to have an abortion may not be automatically converted into an obligation to have one."

The Nevada court further stated that if there are no damages, the negligence is not actionable under the principles of common law negligence, citing Restatement (Second) of Torts, § 328A (1965). Similarly, under Oklahoma law, a negligence action may not be maintained unless the plaintiff has sustained injury inasmuch as injury is an essential element for the claim. *Sloan v. Owen*, 579 P.2d 812, 814 (1977). Because normal birth is not a civil wrong, it cannot give rise to tort liability in negligence. I recede from the Court's recognition of a negligence action for the reason that public policy compels the conclusion that a parent cannot be said to be damaged by the birth of a normal, healthy child.

I, nevertheless, acknowledge the realities of a plaintiff's predicament in this type of case. In my view, the bar against a negligence action does not absolve the defendant from all liability under any theory of law. Rather, I would recognize the viability of a contract action. *Cf. Seanor v. Browne*, 154 Okl. 222, 7 P.2d 627 (1932). In discussing contract liability the *Szekeres* case explained:

> "[I]f a physician or someone else is found to have contracted to prevent a pregnancy from occurring, certainly it was within the contemplation of the contracting parties that failure to carry out the process in the manner promised would result in an award, at least, of the costs of medical, surgical and hospital care associated with the failed surgery. In such a case damages could be awarded in accordance with what was contemplated by the par-

ties at the time the contract was made." *Id.* at 1079.

In summary, human life has always been accorded a special place in our jurisprudence. Because the birth of a child is not a wrong to be legally redressed I cannot find, in light of long-standing common law principles of tort law, the existence of a negligence action. In so concluding, however, I would permit a breach of contract claim, disallowing damages flowing from the birth of a normal child.

I therefore respectfully dissent from the portion of the Court's opinion which recognizes the viability of a medical malpractice action for a failed sterilization.

OPALA, Justice, with whom KAUGER, Justice, joins, concurring in part and dissenting in part.

I concur in Part II of the court's opinion which holds that in a medical malpractice action to recover for a failed sterilization the plaintiff does not have a duty to mitigate damages by undergoing an abortion or placing the unplanned child for adoption. I dissent from Part I which pronounces that the wronged patient may not recover damages equal to the costs of raising the healthy but unintended offspring. I disagree with Justice Hodges' conclusion that the plaintiff's sole remedy lies in an action for breach of contract.[1]

It *must* be noted at the outset that in suits arising from a failed sterilization damages are sought for the physician's substandard performance of a surgical procedure designed to *prevent* a woman from being able to conceive. *The disputes here*

---

1. A majority of states have recognized a tort action for unsuccessful sterilization. In those jurisdictions, the plaintiff does not stand confined to the breach-of-contract remedy. See *Jackson v. Bumgardner*, 318 N.C. 172, 347 S.E.2d 743, 747, footnote 2 [1986]. *Jackson* allowed recovery for a physician's failure to replace an IUD during surgery for an ovarian cyst. The court found no basis for placing medical procedures related to birth control into a distinct tort category that warrants less legal protection than that which is accorded other medical procedures.

It is quite possible that an *ex contractu* claim might support many, if not all, of the same elements of damage that a tort action would

yield. By the teaching of *Hadley v. Baxendale*, 9 Ex. 341, 354, 156 Eng.Rep. 145, 154 [1854], *ex contractu* recovery is allowed for those damages which "may fairly and reasonably be considered arising naturally, i.e., according to the usual course of things, from such breach of contract itself." In the circumstances of a failed sterilization, it is clearly foreseeable that (a) if the defendant-physician were negligent in the performance of a birth-prevention procedure, the plaintiff would likely become pregnant, and that (b) no patient willing to undergo surgical sterilization would be desirous of having a child. *The expense of raising the unplanned child is hence a foreseeable consequence of a failed sterilization procedure.*

*before us bear no legal or logical resemblance to those which may be spawned in the aftermath of a surgical or medical interruption of pregnancy by abortion.*[2] A person's decision *not to conceive a child* and to undergo surgical sterilization should not be confused with one's decision *to abort a child already conceived.*

In my view the parent's recovery should extend to:

(1) the costs of a *failed* sterilization procedure and of a repeated surgery, should the plaintiff desire to undergo another operation *to correct* the former, and damages for pain and suffering,

(2) compensation for the plaintiff's mental and emotional distress, loss of consortium, lost wages, and hospital and medical expenses incident to pregnancy, labor, prenatal and postnatal care, together with

(3) the costs of raising the child to majority.

These elements of damage are, of course, subject to being offset (a) by the anticipated monetary contribution the parents may receive from the child after it reaches majority and (b) by the emotional or other benefits, if any be shown, the parents are likely to derive from the companionship and love of the child.[3]

Procreative self-determination is rooted in the constitutional shield of privacy.[4] It is entitled to the same recognition and protection as that given to other constitutional guarantees.[5] One's liberty to determine when or even whether one will reproduce is vital to the existence of a civilized society and goes to the very essence of human dignity. There is no reason to single out a physician's invasion of this constitutionally protected interest for a diminished measure of recoverable compensation.

Both federal and state governments foster the exercise of procreative self-determination through an extensive network of family planning programs. The Family Planning Services and Population Research

---

**2.** Sterilization means any procedure by which an individual is rendered *incapable of reproduction,* while abortion means the premature expulsion from the uterus of the products of conception. See, *Dorland's Illustrated Medical Dictionary,* 23rd ed. (Philadelphia: W.B. Saunders Company, 1957), pp. 4 and 1302. "Tubal ligation is the most commonly employed sterilization procedure for women. It generally, but not always, results in sterility. Where pregnancy occurs following an unsuccessful attempt at sterilization, a cause of action may lie for wrongful conception or wrongful pregnancy, based on negligence or breach of contract...." See, *Medical and Hospital Law, infra* note 4 at p. 19–4.

**3.** The monetary-contribution offset is likely to be minimal since there are many welfare and retirement programs which provide for support of parents in their later years. See also, *Troppi v. Scarf,* 31 Mich.App. 240, 187 N.W.2d 511, 518 [1971], where the court remarked that "[t]here is a growing recognition that the financial 'services' which parents can expect from their offspring are largely illusory." *Troppi* allowed the plaintiff to recover child-raising expenses for a healthy infant against a pharmacist who negligently filled a birth control prescription. The love-and-companionship offset consists of the same elements as those for which parents may recover in actions for the wrongful death of a child. See, 12 O.S. 1981 § 1055.

**4.** See *Roe v. Wade,* 410 U.S. 113, 152–156, 93 S.Ct. 705, 726–728, 35 L.Ed.2d 147 [1973] and

*Griswold v. State of Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 [1965]; see also, *Sherlock v. Stillwater Clinic, infra* note 5 at 175.

"Competent [*sui juris*] women have a constitutionally protected right to voluntary sterilization. *Sterilization is a legal and medically accepted method of birth control which carries no civil or criminal liabilities for its performance. A state may not restrict voluntary sterilization without proving a compelling need to do so.* This right to sterilization comes within a woman's fundamental right to privacy in matters of reproduction...." [Emphasis supplied.] S. Sandy Sanbar, M.D., Ph.D., J.D., Medical and Hospital Law [Oklahoma City: Law of Medicine Publications, 1987], p. 19–4.

**5.** See, *Ochs v. Borelli,* 187 Conn. 253, 445 A.2d 883, 885 [1982] (in an action for negligent tubal ligation parents recovered full child-rearing costs instead of compensation limited to mild birth defect); *Troppi v. Scarf, supra* note 3, 187 N.W.2d at 517; *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169, 175 [Minn.1977] (parents entitled to costs of raising a healthy child in an action for negligent performance of vasectomy); *Bowman v. Davis,* 48 Ohio St.2d 41, 356 N.E.2d 496, 499 [1976] (parents could recover child-rearing expenses for a healthy child in an action arising from negligent tubal ligation). See also Annot., Tort Liability For Wrongfully Causing One To Be Born, 83 ALR3d 15, §§ 21–25 [1978].

Act of 1970 authorizes federal funding for family planning services, education, and research concerning contraceptive development.[6] Similarly, the Oklahoma legislature has established family planning centers [7] as a tool of implementing its declared policy that "[f]amily planning services are ... *essential* to the health and welfare of the citizens of Oklahoma." [Emphasis added] [8]

Everyday, millions of people throughout this Nation exercise their protected liberty interest in procreative self-determination by the use of contraceptives. These people use contraceptives because they choose not to have children, healthy or otherwise.[9] Their decision is often dictated by lack of emotional or financial resources to raise a well-kept child.[10] The birth of an unplanned healthy and normal offspring unquestionably imposes emotional and economic stress on the parents' psyche and on their financial resources. No amount of rhetoric can paper over this undeniable fact of real life. Contraception has thus become an integral part of the American family unit.[11] Unimpeded access by *legally competent* adults to birth-prevention devices of their choice merits full-scale judicial protection. The law's solicitude for this value must be expressed in no less than *complete* vindication for those who are harmed by the substandard administration of medical or surgical sterilization procedures. *Contraceptive access rights, if any, of underage individuals or of those who may be under legal disability are not* *implicated in the cases before us today. That issue is left unaddressed.*

A physician's failure to accomplish a successful sterilization procedure directly causes the parents to put forth a substantial amount of money and emotional energy to discharge a familial responsibility to which they had already decided not to allot any of their available resources.[12] The ensuing financial and emotional burdens are a foreseeable consequence of the defendant's negligence. A fundamental and time-honored tenet of tort law is to hold the actor liable for *all* damages which are a direct result of the wrong.[13] Fairness requires that the injured party receive full compensation for the harm suffered.[14]

An award of child-rearing costs is consistent with public interest in minimizing substandard medical practice. It would provide an incentive for physicians to take greater care when performing sterilization procedures. Great violence is done to the law's symmetry that places like interests under the same rubric when a limited recovery is fashioned for the harm from one particular type of medical procedure. There is no basis for the conclusion that *want of due care in sterilizations deserves lesser quantum of compensation than negligent performance of other medical procedures.*[15] Child-rearing costs are not speculative; they are routinely calculated by actuaries for estate planners and insurance companies.[16] These costs are also familiar to and well understood by the average citizen.

6.  42 U.S.C. §§ 300 et seq. [1982].

7.  63 O.S. 1981 §§ 2071–2075.

8.  63 O.S. 1981 § 2071.

9.  *Troppi v. Scarf, supra* note 3, 187 N.W.2d at 517.

10. *University of Ariz. v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294, 1299 [1983] (parents recovered child-raising expenses for a healthy child in an action to recover for negligent performance of vasectomy).

11. *Sherlock v. Stillwater Clinic, supra* note 5 at 175.

12. *Troppi v. Scarf, supra* note 3, 187 N.W.2d at 513.

13. *University of Ariz. v. Superior Court, supra* note 10 at 1300; *Sherlock v. Stillwater Clinic, supra* note 5 at 175 and *Troppi v. Scarf, supra* note 3, 187 N.W.2d at 514.

14. *Sherlock v. Stillwater Clinic, supra* note 5 at 175 and *Stills v. Gratton,* 55 Cal.App.3d 698, 127 Cal.Rptr. 652 [1976] (the mother was allowed to recover child-rearing expenses for a healthy infant in her action for a negligently performed abortion).

15. *Sherlock v. Stillwater Clinic, supra* note 5 at 175.

16. *Jones v. Malinowski, infra* note 19 at 436.

Procreative self-determination deserves complete judicial protection as a value firmly anchored on the constitutional guarantee of privacy. A meaningful shield for this liberty violates *no* espoused principle of public policy. On the contrary, it is consistent with both federal and state legislation and with contemporary societal mores. Recovery of child-rearing costs does no discredit to the value of human life. It compensates the injured party for the diversion and diminution that family resources suffer because of a physician's professional negligence.[17] Recognition of harm dealt the parents by the birth of an unplanned child neither disparages the value of human life nor ignores the intangible benefits of parenthood; it realistically appraises that "parental pleasure softens but does not eradicate economic reality." [18] *In short, ample recovery for the consequences of conception that should have been prevented by the exercise of due professional care will vigorously further our society's goal to achieve a stable family structure through population control.*[19]

**17.** *Sherlock v. Stillwater Clinic, supra* note 5 at 173.

**18.** *Ochs v. Borelli, supra* note 5 at 445 A.2d 885–886.

**19.** *Jones v. Malinowski,* 299 Md. 257, 473 A.2d 429, 435 [1984] (parents allowed compensation for raising a healthy child in an action for negligent tubal laparoscopy).