Glenn E. and Eddie M. WYNN,
Jr., Appellees,

v.

ESTATE OF Dick HOLMES, Deceased,
Richard K. Holmes, Administrator
of the Estate, Appellant.

No. 72709.

Court of Appeals of Oklahoma,
Division No. 2.

Aug. 20, 1991.

Steven M. Harris, Michael D. Davis, Doyle & Harris, Tulsa, for appellees.

Harry M. Crowe, Jr., Ann C. Hinnant, Crawford, Crowe, Bainbridge, Litchfield & Harris, P.A., Tulsa, for appellant.

BRIGHTMIRE, Judge.

In this malpractice action against the estate of a deceased accountant, the plaintiffs seek recovery of interest assessed by the Internal Revenue Service on the delinquent payment of income taxes as a result of the accountant's error in preparing their federal income tax return.

The trial court held that the plaintiffs' action was not barred by the statute of limitations and, among other things, awarded them judgment for the interest penalty.

The defending estate appeals. We affirm.

## I

The plaintiffs, Glenn and Eddie Wynn, had employed accountant Dick Holmes for a number of years to prepare both their corporate and personal income tax returns. On the Wynns' 1979 joint federal income tax return, Holmes claimed a $148,146 loss on some small business stock owned by the Wynns in Aero Video, Inc.

In 1981, the Wynns were notified by the IRS that their 1979 return would be audited. Holmes was informed of this unwelcome development and obtained a power of attorney for the purpose of representing the Wynns during the audit process.

As early as October 1981, it became clear that the figure used by Holmes for the stock loss deduction exceeded the maximum amount permitted by federal law, thus causing the plaintiffs to underpay their federal income tax.[1] Throughout the three years of negotiations with the IRS, however, the accountant and his associates assured the plaintiffs that the error could be corrected by means of reclassifying the deduction, and thereby prevent any economic loss to the plaintiffs.

In February 1983, Holmes told the plaintiffs that the amount erroneously claimed should be allowed as "a bad debt, not a loss, deduction" and that he had sought IRS appellate review of the "findings of the examiner."[2] Then, in a letter dated September 5, 1983, an accountant assisting Holmes during the audit, W.N. Clark, informed the Wynns that an IRS "appellate staff representative" had proposed "that they would allow $68,627.00 as a business bad debt to be deductible in full and the balance of the loss as a non-business bad debt, deductible as a short term capital loss limited to $3,000.00 per year." The letter also said that the "additional taxes of $51,-770.65" could be "less, depending on the outcome of some points that came up in the review."

Holmes died April 13, 1984. In a "proposal" dated August 21, 1984, the IRS offered to settle the matter on the basis of $47,148.57 in additional taxes. Clark rec-

---

**1.** It is undisputed that under 26 U.S.C. § 1244 (1978), the maximum allowable claim for such loss is $100,000.

**2.** Further examination of the matter disclosed that a corporation owned by the plaintiffs, and not the plaintiffs themselves, had bought the Aero Video stock precluding the plaintiffs from claiming a bad debt loss on their individual return.

ommended that the Wynns accept the compromise.

A few weeks later, in a letter dated September 17, 1984, accountant Clark told the Wynns that they would "soon be receiving the IRS billing for the balance of the above taxes [which] will most assuredly contain interest for the full four and one-half years which is too much." He advised the Wynns that "this interest charge should be protested because of the IRS delay in making a completion of the audit and settlement." And indeed, on October 13, 1984, the IRS sent notice that "[w]e have closed this case on the basis agreed upon and are sending the case file to the service center [which] will adjust the account *and compute interest.*" (Emphasis added.)

On December 10, 1984, the Wynns received notice of the results of the audit and a deficiency assessment of $47,148.57 in additional taxes and $36,089.42 in interest.

The Wynns filed their petition December 9, 1985, alleging that when they received the December 1984 "statement from the [IRS, they] first became aware that they had been deceived and misled by Holmes ... and that they would suffer and incur an economic loss because of the negligent" work of Holmes. They sought recovery from the estate of Holmes of the interest charged on the delinquent taxes. On May 4, 1987, they moved for summary judgment.

The defendant estate, in turn, moved for summary judgment on January 27, 1988, contending that the action was barred by the statute of limitations. The "civil action docket" indicates the trial court denied the motion April 27, 1988.

The plaintiffs' motion for summary judgment was denied on December 19, 1988, and the court proceeded with a non-jury trial. At the conclusion of the evidence, the trial court granted the plaintiffs a judgment for the full amount of the interest assessment and denied their prayer for prejudgment interest and an attorney fee. On January 27, 1989, the court granted the plaintiffs' motion for a partial new trial on the interest issue and awarded them $10,-871.08 pre-judgment interest. The defendant estate appeals.

## II

The estate first contends that the trial court erred in failing to find that the Wynns' claim is barred by the two-year statute of limitations of 12 O.S.1981 § 95 (Third).

The argument is that when the Wynns received the September 5, 1983, letter from Clark, they knew of Holmes' negligent tax return preparation error and that the erroneous deduction would not be allowed. The estate therefore concludes that the plaintiffs' cause of action accrued at that time.

■ We disagree. Generally, professional malpractice actions in Oklahoma have been held to be governed by the two-year statute of limitation of 12 O.S.1981 § 95 (Third). *See Funnell v. Jones,* 737 P.2d 105 (Okl.1985), *cert. denied,* 484 U.S. 853, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987). We know of no reason why such provision should not be applied to accountant or tax return preparer malpractice. Such actions "can only be brought within [the statutory] periods after the cause of action shall have accrued." 12 O.S.1981 § 95. And "a cause of action accrues at the moment the party owning it has a legal right to sue." *Loyal Order of Moose, Lodge 1785 v. Caveness,* 563 P.2d 143, 146 (Okl.1977).

■ "Accrual," as that term is used with regard to limitations of actions, is not merely the point in time a person first realizes a potential defendant has breached a duty. It is fundamental that actionable negligence consists of another essential element: Legally cognizable and discernible detriment resulting from the breach. *Sloan v. Owen,* 579 P.2d 812 (Okl.1977). The question here, then, becomes this: At what point did it become definite and certain that the plaintiffs had suffered the consequential detriment for which they seek recovery?

The estate contends the September 1983 letter triggered commencement of the limitations period because "the Wynns knew

that the consequences of Holmes' negligence [*sic*] act was [*sic*] [1] an additional tax bill of substantial size and [2] *the consequent assessment of interest on the delinquent amount.*" (Emphasis added.) The trouble with this reasoning is, however, that the evidence does not support the existence of the vital last suggested consequence.

The September 1983 letter did not inform the plaintiffs of any interest, penalty, or any other economic loss, actual or potential. The only thing the accountant informed the plaintiffs of was that an agreement had been reached on the "business bad debt deduction" but that the undisclosed settlement amount was not final and could be "less, depending on the outcome of some points that came up in the review." The accountant also advised the plaintiffs that they could further reduce their tax liability if they "can find a good investment that will pay-off a good profit on a short term basis." *No mention of even the possibility of interest charges or penalties on the delinquent tax had ever been made.* And more importantly, as we shall see, no assessment of interest was made by the government until December 10, 1984. Under these circumstances *the plaintiffs had no basis or right to seek recovery of a nonexistent interest assessment until it was made by the government.* In short, they had no legal foundation for a claim in September 1983. The fact is, it would have been risky for the plaintiffs to have filed a lawsuit for an unknown and unknowable economic loss only to find the government

was making no claim resulting in an economic loss. Such a lawsuit could have ended up being dismissed with both the lawyer and the client sanctioned.[3]

It was August 1984 before the IRS submitted its "proposal to settle" the dispute—for an amount less than that expressed in the accountant's 1983 letter. The proposal made no mention of any interest charges.

Then, on September 17, 1984, the accountant notified the plaintiffs that they "will soon be receiving the IRS billing for the balance of the above taxes [*including*] *a charge for interest.*" (Emphasis added.) This is the *first* mention of any interest charge. And when it was mentioned, the accountant encouraged the plaintiffs to protest any such interest charge "because of the IRS delay in making a completion of the audit and settlement." It is apparent, therefore, that a claim against Holmes was inchoate and the plaintiffs' "legal right to sue" had not yet ripened.

It was not until the plaintiffs received an IRS deficiency notice dated December 10, 1984, that the nature and extent of their economic loss became known—interest charges of $36,089.42 on delinquent taxes of $47,148.57.[4]

We hold that identifiable or ascertainable detriment occasioned by the negligence of Holmes was not established until December 10, 1984, when the IRS notified the plaintiffs of the interest assessment. The plaintiffs' cause of action accrued at that time. Consequently, their December 9, 1985, petition was timely.[5]

---

**3.** For example, a $212,000 malpractice award against the plaintiffs' accountant was vacated in *Thomas v. Cleary,* 768 P.2d 1090, 1093 (Alaska 1989), on the ground the action was premature because "the record establishes that the IRS has never sent the Clearys a deficiency notice nor imposed any tax assessment as a result of the failure to file their 1977 corporate tax returns." While the decision did not involve a sanction it does demonstrate that the cause was dismissable when it was filed with the attendant potential for the imposition of sanctions.

**4.** As late as October 31, 1985, the question of what loss the plaintiffs had sustained was still unsettled. Holmes died in April 1984 and his successor protested the interest charge by filing a "claim" with the IRS seeking a refund of 25

percent of the interest paid "[b]ecause of the unnecessary delay in completion of this audit." The outcome of that pending claim is not reflected in the record.

**5.** This appears to be the rule followed by a majority of jurisdictions passing on the issue. *See Atkins v. Crosland,* 417 S.W.2d 150 (Tex. 1967). Other states adopting the *Atkins* rule include *Thomas v. Cleary,* 768 P.2d 1090 (Alaska 1989); *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985); *Bick v. Peat Marwick and Main,* 14 Kan.App.2d 699, 799 P.2d 94 (1990); *Chisholm v. Scott,* 86 N.M. 707, 526 P.2d 1300 (1974); and *Mills v. Garlow,* 768 P.2d 554 (Wyo.1989).

■ There is yet another reason why the decision of the trial court should be upheld and that is the defendant is estopped from asserting the statute of limitations because accountant Holmes had undertaken to represent the plaintiffs in getting the matter straightened out. Throughout the course of the negotiations with the IRS, Holmes advised the plaintiffs from time to time that he thought the matter could be handled in such a manner that the plaintiffs would not suffer any economic loss as a result of the accountant's breach of duty. This certainly would lead the plaintiffs to believe that they neither had nor likely would have, any loss to recover and therefore had no right or need to sue their accountant. The effect of Holmes' advice was to toll the running of the limitation period. *See Nat'l Zinc Co. v. Crow*, 187 Okl. 513, 103 P.2d 560 (1940). The plaintiffs' belief that there would be no loss was not definitely dispelled until December 10, 1984.

## III

The defendant's second assignment of error is that the estate is entitled to credit for the value of the use of the money the plaintiffs owed the government from the date the taxes should have been paid until they were paid.

The argument is that the plaintiffs had the use of the $47,148.57 tax liability money from the due date, April 15, 1980, until the deficiency assessment was issued on December 10, 1984, a benefit that would result in unjust enrichment of the plaintiffs if the defendant is not given an offsetting credit for the "value" of the plaintiffs' use of the money during the four-and-one-half-year period. In support of this theory the defendant placed in evidence an exhibit setting out the interest the plaintiffs could have received had the $47,148.57 been placed in certificates of deposit during the subject period.

The defendant relies on a footnote in *Morris v. Sanchez*, 746 P.2d 184 (Okl.1987), which refers to a so-called "benefit" rule the court cited but did not apply. Factually, *Morris* does not deal with the type of issue we have here. Its primary holding is that "plaintiffs in a medical malpractice action for negligent sterilization may not recover the costs of raising a healthy, normal, but unplanned child as an element of damage." *Id.* at 189.

The only legal doctrine which could have any application at all in this case is the "Collateral Source Rule." In regard to it, the court said in *Burk Royalty Co. v. Jacobs*, 387 P.2d 638 (Okl.1963): "We have many times held that a payment to plaintiffs from a source wholly independent of and not in behalf of the wrongdoer cannot inure to the benefit of the wrongdoer to lessen the damages recoverable from him...."

■ That is the first thing. The second thing is there is no evidence here as to the existence of a fund as such. There is evidence that the plaintiffs had sufficient money to pay the tax in 1980, but none was set aside specifically for that purpose. Indeed, according to Holmes, there was no reason to do so. After that the plaintiffs' liquidity declined right along with the price of oil—the source of their income—and when the tax deficiency was finally assessed, the plaintiffs had to borrow money to pay it. As we will shortly see, this is the reason the trial court awarded them prejudgment interest.

The second proposition of error is without merit.

## IV

Finally, the defendant says it was error for the trial court to award the plaintiffs pre-judgment interest under 12 O.S.Supp. 1990 § 727.[6]

---

**6.** Section 727(A)(2) reads in relevant part:
"2. When a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on said verdict at a rate prescribed pursuant to subsection B of this

**1236**

The argument is that the legislature did not intend "to extend the operation of the statute to judgments for damages for every 'act or omission' of any kind or character."

That may or may not be true. But what the legislature clearly did intend to do, and did do, was extend the reach of the statute to "a verdict for damages by reason of ... injury to personal rights including ... detriment due to an act or omission of another."

██ Since the verdict in this case falls within the purview of § 727(A)(2), the trial court correctly awarded the plaintiffs prejudgment interest.

section from the date the suit was commenced

V

The judgment appealed is therefore affirmed.

REIF, P.J., concurs.

MEANS, J., concurs in result.