996 F.2d 222
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of
Territory Savings & Loan Association, Plaintiff-Appellant,
v.
REGIER CARR & MONROE, Defendant-Appellee.
Arthur Andersen & Co. S.C., Coopers & Lybrand, Deloitte &
Touche, Grant Thornton, KMPG Peat Marwick, & BDO
Seidman, Amici Curiae.
 No. 92-7109.
 United States Court of Appeals,
Tenth Circuit.
 May 25, 1993.
 
 Edward O'Meara, F.D.I.C., Washington, DC (Claire V. Eagan, Susan L. Gates, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, Ann S. DuRoss, F.D.I.C., Washington, DC, on the brief) for plaintiff-appellant.
 John R. Gerstein, Ross, Dixon & Masback, Washington, DC (Lona T. Perry, Ross, Dixon & Masback, Washington, DC, George S. Corbyn, Jr., Phillip G. Whaley, Ryan, Corbyn & Geister, Oklahoma City, OK, with him on the brief) for defendant-appellee.
 Stanley J. Parzen & Roger J. Jones, Mayer Brown & Platt, Chicago, IL & Rex E. Lee, Sidley & Austin, Washington, DC (of counsel, Donald Dreyfus, Counsel, Arthur Andersen & Co., S.C., Harris J. Amhowitz, Gen. Counsel, Coopers & Lybrand, Howard J. Krongard, Gen. Counsel, Deloitte & Touche, Margaret Maxwell Zagel, Gen. Counsel, Grant Thornton, Leonard P. Novello, Gen. Counsel, KMPG Peat Marwick, & Scott M. Univer, Gen. Counsel, BDO Seidman) for amici curiae Arthur Andersen & Co. S.C., Coopers & Lybrand, Deloitte & Touche, Grant Thornton, KMPG Peat Marwick, & BDO Seidman.
 Before BALDOCK and KELLY, Circuit Judges and OWEN, District Judge.
 PAUL KELLY, Jr., Circuit Judge.
 
 
 1
 Plaintiff-appellant FDIC appeals the district court's grant of summary judgment, arguing that the statute of limitations does not bar its cause of action. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.
 
 Background
 
 2
 Territory Savings & Loan Association of Seminole, Oklahoma (Territory) hired defendant-appellee accounting firm (Regier) as an independent outside auditor in 1982. After Regier issued a report critical of Territory's management for the fiscal year (FY) ending March 31, 1983, Territory hired Robert L. Thomason as its president.
 
 
 3
 On November 29, 1984, the board authorized Thomason to trade negotiable instruments without prior authorization, but required that Thomason notify the board of any activity which resulted in a loss or gain greater than two percent. In addition, a policy statement described permitted activities, authorizations and restrictions, and control procedures relating to financial futures trading and financial options contracts. Thomason engaged in speculative trading practices which resulted in significant losses to Territory. Thomason also approved loans that were undercollateralized and improperly underwritten.
 
 
 4
 Regier's audit for Territory's FY 1984 was presented to the board on December 17, 1984. The opinion letter was unqualified, but the financial statements indicated a net operating loss of $458,069. In a management letter, Regier expressly noted that certain accounting records were not reconciled, escrow accounts were not properly maintained and loan underwriting, while undergoing improvements, still required close monitoring. Regarding Territory's new leadership, Regier stated that it could not attempt to affix blame for the weaknesses with either previous management or Thomason.
 
 
 5
 In January 1985, Territory's board received a report from the Federal Home Loan Bank Board which was highly critical of the operation of the bank. In response, Territory engaged Regier to perform certain consulting work, including reconciling general ledger accounts, assisting Territory personnel in recording transactions, and reviewing Territory's reports for compliance with federal regulations and proper methodology. In July 1985, Territory's board was advised that Territory had suffered a "deferred loss on investment" in the amount of $1.6 million, but believed the loss would be amortized over several years.
 
 
 6
 The board became concerned about Thomason's trading practices and, in late 1985, curtailed these activities. During the December 17, 1985 board meeting, representatives of Regier reported that a loss of approximately $1.4 million in futures trading would be reflected in the FY 1985 financial statements. The board voted unanimously to request Thomason's resignation.
 
 
 7
 On June 29, 1987, Territory commenced an action against several brokers and brokerage firms. The complaint was amended on December 23, 1987 to include Regier as a defendant alleging liability for its failure to alert Territory to the mismanagement of Thomason. FSLIC was appointed as the receiver for Territory on January 29, 1988 and substituted as the plaintiff in the action against Regier. By operation of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), the receivership for Territory was transferred to the FDIC on August 9, 1989. 12 U.S.C. § 1441a(b)(3)(A). The district court severed the FDIC's claims against Regier and granted summary judgment in favor of Regier on all claims. The district court concluded that (1) as a matter of law, Thomason's knowledge of his own activities was imputable to the board, eliminating the necessary element of reliance on the audit report, and (2) alternatively, the statute of limitations for tort, applicable to all claims of professional malpractice under Oklahoma law, barred the action.
 
 Discussion
 
 8
 Because this is an appeal from a grant of summary judgment, our review is de novo and we apply the same legal standard used by the district court in evaluating the summary judgment motion, namely Fed.R.Civ.P. 56(c). Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). See also Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.' ") (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592-93, 20 L.Ed.2d 569 (1968)).
 
 
 9
 In Funnell v. Jones, 737 P.2d 105, 107 (Okla.1985), cert. denied, 484 U.S. 853, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987), the court held that "an action for malpractice ... though based on a contract of employment, is an action in tort and is governed by the two-year statute of limitations...." Recently, in Wynn v. Estate of Holmes, 815 P.2d 1231, 1233 (Okla.Ct.App.1991), this same principle was applied to a claim of accounting malpractice. The limitation period "begins to run from the date the negligent act occurred or from the date the plaintiff should have known of the act complained of." Funnell, 737 P.2d at 107.
 
 
 10
 FDIC relies on Great Plains Fed. Sav. and Loan Ass'n v. Dabney, 846 P.2d 1088 (Okla.1993), to support its position that its claim could sound in either contract or tort. However, that case reaffirmed that "if the alleged contract of employment merely incorporates by reference or by implication a general standard of skill or care which a defendant would be bound independent of the contract a tort case is presented governed by the tort limitation period." Id. at 1092. The engagement letter incorporated by reference "generally accepted auditing standards," Aplt.App. at 222, and proposed nothing beyond the general standard of care for certified public accountants. Although FDIC delineates the various obligations mentioned in the letters, the list consists of nothing beyond Regier's normal duty of care. The principles of Wynn therefore control and FDIC's suit is subject to the two-year statute of limitations applicable to tort actions.
 
 
 11
 FDIC asserts that had Territory been advised of Thomason's wrongful trading activities, it would have fired him sooner and averted further losses caused by Thomason. The crux of this argument is that the malpractice of Regier deprived Territory's board of timely knowledge concerning Thomason and the losses caused by him. However, Territory's board voted unanimously to ask for Thomason's resignation on December 17, 1985 "after it became aware that his trading activities ... had resulted in actual losses of $1.4 million and that loan losses of $1.6 million were necessary." Aplt.Brief at 10. See also Aplt.App. at 551 (Minutes of Dec. 17, 1985 Board Meeting).
 
 
 12
 We may deduce that, even if Thomason's mismanagement was concealed prior to December 17, 1985, at that point the board became aware of Thomason's activities and acted accordingly. Territory's board also knew that Regier had not apprised them of the extent or nature of Thomason's trading losses before that date. If, as alleged in the complaint, Regier's failure to notify the board of these losses earlier amounted to malpractice, then Territory was on inquiry notice of this malpractice at least by December 17, 1985. This started the running of the two-year statute of limitations period. Because this action was not commenced prior to December 17, 1987, it is barred.
 
 
 13
 We conclude that the claims against Regier were filed by Territory after the statute of limitations had run. After the suit was commenced, the FSLIC, and later the FDIC, was substituted as plaintiff. The FDIC argues that the enactment of FIRREA, with its more generous limitations provision, saves this cause of action. FIRREA provides that a longer statute of limitation will apply to claims brought by the FDIC and that the statute of limitations will not commence until the date the receiver is appointed.[1]
 
 
 14
 One circuit court and several district courts specifically addressing this issue have held that the limitation period of FIRREA may not apply retroactively to revive a claim that is already barred by a state statute of limitations. FDIC v. McSweeney, 976 F.2d 532, 534 (9th Cir.1992) ("The FDIC may not ... revive claims for which the state limitations period has expired before the date of federal receivership."), cert. denied, --- U.S. ----, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993); FDIC v. Bancinsure, Inc., 770 F.Supp. 496, 499 (D.Minn.1991) (FIRREA may apply retroactively so long as the claim was not "stale" when filed); Resolution Trust Corp. v. Krantz, 757 F.Supp. 915, 920-22 (N.D.Ill.1991) (stale claims may not be revived by transfer to a federal agency), reconsideration denied, 1991 WL 35514 (1991). We agree with the reasoning of these courts and with the Third Circuit's reasoning in FDIC v. Hinkson, 848 F.2d 432 (3d Cir.1988). Although Hinkson predated FIRREA, it clearly established that the government should take claims subject to the state statute of limitations unless there is clear Congressional intent to the contrary:
 
 
 15
 [S]tate limitations are ... relevant in determining a claim's viability at the time the federal agency gains eligibility to sue. If the state statute of limitations has expired before the government acquires a claim, it is not revived by transfer to a federal agency. In Guaranty Trust Co. v. United States, 304 U.S. 126, 142, 58 S.Ct. 785, 793, 82 L.Ed. 1224 (1938), the Supreme Court held that the federal government suffers no deprivation in such a circumstance. "[T]he proof demonstrates that the United States never acquired a right free of a pre-existing infirmity, the running of limitations against its assignor, which public policy does not forbid." See also [FDIC v.] Consolidated Mortgage & Fin. Corp., 805 F.2d at 17-18 n. 4 [ (1st Cir.1986) ]; [FDIC v.] Cardona, 723 F.2d at 134 [ (1st Cir.1983) ].
 
 
 16
 Hinkson, 848 F.2d at 434. See also FDIC v. Former Officers & Directors of Metropolitan Bank, 884 F.2d 1304, 1309 n. 4 (9th Cir.1989), cert. denied, 496 U.S. 936, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990). "Were this not the law, then the FDIC, FSLIC, or RTC could, by the mere act of taking conservatorship of a bank, revive claims relating to acts done during the Great Depression." Krantz, 757 F.Supp. at 920. Such a result would conflict with the function of statutes of limitation, which is to ensure that claims are litigated in a timely manner. We are not persuaded by FDIC's argument that the legislative history of FIRREA indicates an intent that the statute of limitations provisions apply to stale claims.
 
 Conclusion
 
 17
 The statute of limitations having barred the FDIC's claim, we find it unnecessary to resolve the issue of whether Thomason's knowledge could be imputed to the board to preclude the element of reliance.
 
 
 18
 AFFIRMED.
 
 
 19
 FNThe Honorable Richard Owen, Senior United States District Judge for the Southern District of New York, sitting by designation.
 
 
 
 [1]
 12 U.S.C. § 1821(d)(14)(A) provides:
 Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be--
 (i) in the case of any contract claim, the longer of--
 (I) the 6-year period beginning on the date the claim accrues; or
 (II) the period applicable under State law; and
 (ii) in the case of any tort claim, the longer of--
 (I) the 3-year period beginning on the date the claim accrues; or
 (II) the period applicable under State law.
 12 U.S.C. § 1821(d)(14)(B) further allows that "the date on which the statute of limitation begins to run on any claim ... shall be the later of--(i) the date of the appointment of the Corporation as conservator or receiver; or (ii) the date on which the cause of action accrues."