CAROL OCHS ET AL. *v.* ANTHONY P. BORRELLI ET AL.

PETERS, HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued March 12—decision released June 1, 1982

254

*Edward J. Holahan, Jr.,* for the appellants (defendants).

*Richard A. Silver,* with whom were *Stanley A. Twardy, Jr.,* and, on the brief, *Patricia M. Haugh,* for the appellees (plaintiffs).

PETERS, J.   The principal issue in this case of first impression in Connecticut is whether the parents of a child conceived after an unsuccessful sterilization procedure may be compensated for the costs of rearing that child when the physician who performed the procedure is found to be negligent. The plaintiffs, Carol and William Henry Ochs III, brought suit against the defendants, physician Anthony P. Borrelli and his professional corporation, following the birth of their daughter, Catherine, with a mild orthopedic defect.   After a jury found for the plaintiffs and awarded damages, the defendants, conceding negligence, appealed the question of damages to this court.

The underlying facts of this case are not disputed. In July, 1973, the plaintiff Carol Ochs arranged for the individual defendant, a licensed physician and surgeon, to perform a sterilization procedure known as a laparoscopic tubal ligation.   At this time the plaintiff had two children, both born with ortho-

pedic defects, and a gynecological history of miscarriage and ovarian surgery. Following the laparoscopic sterilization the plaintiff conceived a third child, Catherine Jean Ochs, who was born on February 1, 1975 with a more severe version of her siblings' orthopedic problem.[1] The plaintiff subsequently underwent a second, successful sterilization procedure.

In the first count of her complaint, the plaintiff sought damages for her own medical expenses and pain and suffering occasioned by the failed sterilization. In the second count, the plaintiff and her husband sought damages for medical care necessitated by Catherine's orthopedic disability and for the costs of raising Catherine to her majority. The jury awarded the plaintiffs $49,985 in damages on the first count and $56,375 on the second count.

The defendants' appeal, admitting negligence, is limited to the question of the proper measurement of damages. With respect to the first count, the plaintiff's own damages, the defendants claim that the award is excessive in amount. With respect to the second count, seeking damages for costs incurred and to be incurred by the plaintiff and her husband in caring for Catherine, the defendants concede their responsibility to provide compensation for Catherine's orthopedic expenses[2] but deny the propriety of an award for child-rearing expenses. Because of their relative importance, we

---

[1] Catherine was born with two orthopedic problems, forefoot metatarsus adductus and flatfoot. Although the forefoot adductus was corrected by casts and exercise, the flatfoot condition and a mild knock-knee continue.

[2] The cost of Catherine's orthopedic treatment was $230. Although her condition has not been completely corrected, the only remaining treatment she requires is the use of arch supports in her shoes.

will consider these claims in reverse order and thus address first the arguments arising out of the second count.

## I

In reviewing the issues raised by the plaintiffs' second count, we must first identify the way in which these issues are framed by the context of this case. The defendants do not deny that the plaintiffs have proven a cause of action for the wrongful conception of Catherine, for they have now conceded both their negligence and their liability to pay Catherine's orthopedic expenses. They maintain, however, that a cause of action for wrongful conception may not encompass a claim for recovery of ordinary child-rearing expenses. The linchpin of this argument is the defendants' assertion that public policy requires us to hold that the birth of a child is always a blessing to its parents and that this benefit must, as a matter of law, totally offset concomitant financial burdens. The trial court rejected this argument in its instructions to the jury,[3] and so do we.

This court has not, before today, had the opportunity to determine the boundaries of a cause of

[3] Over the defendants' timely objection, the trial court charged the jury:

"The plaintiff seeks damages for the past and future expenses for the care, education, welfare, and maintenance of Catherine Jean Ochs. Where the negligence of the defendant is proven, the law allows the plaintiff to recover for the past and anticipated expenses of rearing the unplanned-for child, the rationale being that the new arrival should not deprive the other members of the family of what was planned as their just share of the family income. . . .

"Thus, if you find that the defendant was negligent in performing the tubal cauterization on the plaintiff Carol Ochs, and that said negligence was a proximate cause of the birth of Catherine Jean Ochs, then the expense for the care, education, welfare, and maintenance of Catherine Jean Ochs until she attains the age of eighteen, are recoverable by the parents so that the other family members

action for wrongful conception. The question has, however, arisen with some frequency in other jurisdictions since the landmark decision in *Custodio v. Bauer,* 251 Cal. App. 2d 303, 59 Cal. Rptr. 463 (1967). Courts have responded by staking out a broad range of positions from rejection of any damages for the birth of a healthy child following a failed sterilization procedure; see, e.g., *Wilbur v. Kerr,* 275 Ark. 239, 628 S.W.2d 568, 571 (1982); *Coleman v. Garrison,* 349 A.2d 8, 12 (Del. 1975); *Wilczynski v. Goodman,* 73 Ill. App. 3d 51, 62, 391 N.E.2d 479 (1979); *Rieck v. Medical Protective Co.,* 64 Wis. 2d 514, 518–19, 219 N.W.2d 242 (1974); to allowance of child-rearing expenses for the negligent birth of an unplanned child. See, e.g., *Custodio v. Bauer,* supra, 323–25; *Cockrum v. Baumgartner,* 99 Ill. App. 3d 271, 273–74, 425 N.E.2d 968 (1981); *Troppi v. Scarf,* 31 Mich. App. 240, 251, 187 N.W.2d 511 (1971); *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169, 175–76 (Minn. 1977); *Mason v. Western Pennsylvania Hospital,* 286 Pa. Super. 354, 362, 428

will not be financially deprived by the unplanned addition of another child, and thus are proper elements in your award to the plaintiffs. . . .

"Now, as I say, the plaintiff parents claim child-rearing expenses during the child's minority. The child's minority ends when she reaches her eighteenth birthday. In considering this claim of damages, any child-rearing expenses must be reduced by the value of the benefits conferred on the parents by having and raising the child. Such benefits may be the satisfaction, the fun, the joy, the companionship, and the like, which the plaintiff[s] as parents have had and will have in the rearing of the child and which make economic expenses worthwhile.

"While it is recognized that the intangible benefits of parenthood are difficult to value in monetary terms, family size, family income, age of the parents, and marital status are some of the factors which you must consider in determining the extent to which the birth of a particular child represents a benefit to his parents.

"Again, the task of making this calculation is entrusted to your best judgment and common sense."

A.2d 1366 (1981); see generally "Wrongful Birth: A Child of Tort Comes of Age," 50 Cin. L. Rev. 65 (1981); "Wrongful Conception: Who Pays for Bringing Up Baby?" 47 Fordham L. Rev. 418 (1978); Kashi, "The Case of the Unwanted Blessing: Wrongful Life," 31 U. Miami L. Rev. 1409 (1977); "Liability for Failure of Birth Control Methods," 76 Colum. L. Rev. 1187 (1976).

In our view, the better rule is to allow parents to recover for the expenses of rearing an unplanned child to majority when the child's birth results from negligent medical care. The defendants ask us to carve out an exception, grounded in public policy, to the normal duty of a tortfeasor to assume liability for all the damages that he has proximately caused. See, e.g., *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 103, 285 A.2d 330 (1971); *Mourison* v. *Hansen,* 128 Conn. 62, 65, 20 A.2d 84 (1941); 4 Restatement (Second), Torts (1979) § 902. But public policy cannot support an exception to tort liability when the impact of such an exception would impair the exercise of a constitutionally protected right. It is now clearly established that parents have a constitutionally protected interest located "within the zone of privacy created by several fundamental constitutional guarantees;" *Griswold* v. *Connecticut,* 381 U.S. 479, 485, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965); *Roe* v. *Wade,* 410 U.S. 113, 153, 93 S. Ct. 705, 35 L. Ed. 2d 147, reh. denied, 410 U.S. 959, 93 S. Ct. 1409, 35 L. Ed. 2d 694 (1973); to employ contraceptive techniques to limit the size of their family. The defendants' general argument of public policy is therefore unpersuasive. *Troppi* v. *Scarf,* supra, 517.

The defendants offer two further objections to their liability for the normal care of the plaintiffs' unplanned child. They insist, first, that to allow a recovery of damages would erroneously equate the birth of a child with an injury to its parents and, second, that the damages awarded here are too speculative to be permitted. We reject these specific objections as well.

The defendants' initial argument founders on its premise that a recognition of the economic costs of parenthood is necessarily a negative judgment on the child who occasions them. We may take judicial notice of the fact that raising a child from birth to maturity is a costly enterprise, and hence injurious, although it is an experience that abundantly recompenses most parents with intangible rewards. There can be no affront to public policy in our recognition of these costs and no inconsistency in our view that parental pleasure softens but does not eradicate economic reality. The plaintiffs' testimony at trial confirming their love for Catherine should not become a reason for denying them financial relief.

It bears emphasis, furthermore, that the trial court did not impose upon the defendants the total burden of the economic costs of the plaintiffs' parenthood. The trial court, with the plaintiffs' concurrence, instructed the jury to reduce potentially recoverable child-rearing expenses "by the value of the benefits conferred on the parents by having and raising the child. Such benefits may be the satisfaction, the fun, the joy, the companionship, and the like, which the plaintiff[s] as parents have had and will have in the rearing of the child and which make economic expenses worthwhile." In

effect, rather than invoking a per se rule that benefits always outweigh costs, or costs always outweigh benefits, the court adopted the case-by-case balancing test of the Restatement (Second) of Torts. That rule provides that "[w]hen the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable." 4 Restatement (Second), Torts (1979) § 920; see *Sherlock* v. *Stillwater Clinic,* supra, 176; *Mason* v. *Western Pennsylvania Hospital,* supra, 362–63.[4]

Although we recognize that this balancing test requires the jury to mitigate economic damages by weighing them against noneconomic factors, we reject the defendants' claim that such a weighing process is "impermissibly speculative."[5] We see no basis for distinguishing this case from other tort cases in which the trier of fact fixes damages for wrongful death; see, e.g., *Kiniry* v. *Danbury Hospital,* 183 Conn. 448, 456–57, 439 A.2d 408 (1981); or for loss of consortium. See, e.g., *Hopson* v. *St. Mary's Hospital,* 176 Conn. 485, 494–95, 408 A.2d 260 (1979).

---

[4] We note that although, at trial, the plaintiffs were questioned about their failure to mitigate their damages by resorting to abortion or to adoption, no such claim has been pressed here. We will, therefore, limit our discussion to the observation that an injured party compromises his right to recover damages only by the failure to use "reasonable effort or expenditure after the commission of the tort." 4 Restatement (Second), Torts (1979) § 918; see *Cockrum* v. *Baumgartner,* 99 Ill. App. 3d 271, 274, 425 N.E.2d 968 (1981); *Troppi* v. *Scarf,* 31 Mich. App. 240, 258, 187 N.W.2d 511 (1971).

[5] In rejecting the defendants' claim, we do not mean to suggest that damages may ever be awarded which are speculative.

## II

With respect to the first count of the complaint, the defendants claim that the jury's award to Carol Ochs for her medical expenses and pain and suffering was excessive and that the trial court therefore erred in refusing to set aside the verdict. The record does not support this claim. At trial Carol Ochs testified to her anxiety throughout her pregnancy "that the baby was going to be deformed," her inability to eat or sleep, and such physical complications as a ruptured vein. Several months after Catherine's birth, Carol Ochs underwent a second sterilization procedure, this time an abdominal tubal ligation which she testified caused her four weeks of serious discomfort; she then returned for a hysterosalpingogram, a painful x-ray procedure, to verify the success of the second sterilization. The plaintiff's evidence of medical expenses included $942.60 for Catherine's birth; a $1315.50 hospital bill for the second tubal ligation; and a $350 surgeon's fee for the sterilization and subsequent test. William Ochs testified to his wife's emotional distress throughout her pregnancy and her anxiety about the baby's potential deformity. In light of this evidence, we cannot say that the jury's award of $49,985 was clearly excessive or that the trial court's acceptance of that verdict was improper. *Tomczuk* v. *Alvarez,* 184 Conn. 182, 187–89, 439 A.2d 935 (1981); *Kiniry* v. *Danbury Hospital,* supra, 458.

There is no error.

In this opinion the other judges concurred.