[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
By writ, summons and complaint filed in this court on November 17, 1989, the plaintiff, Glenda Martinez, instituted this medical malpractice action against the defendants, Hartford Hospital, Dr. Gloria Korta and Dr. Robert Wool [hereinafter defendant].
Subsequently, six revised, conformed or amended complaints have been filed. The plaintiff's August 22, 1990, three count amended complaint is the subject of the instant motion to strike. CT Page 4613
The facts as alleged in that amended complaint are as follows. Upon reaching the age of twenty-one, the plaintiff, then the mother of four children, went to Hartford Hospital to inquire about a voluntary sterilization. She was interviewed and examined on October 15, 1985, and November 15, 1985, and underwent sterilization by tubal ligation on November 20, 1985. On January 26, 1986, the plaintiff returned to the hospital and learned for the first time that she was approximately eighteen weeks pregnant and had conceived on or about October 1, 1985. On June 21, 1986, she gave birth to twin girls.
The plaintiff alleges that the defendants undertook CT Page 4614 to attend to, examine, evaluate and treat her and to use due, reasonable and proper skill in so doing. The plaintiff alleges that the defendants negligently and carelessly failed to exercise proper skill and care in the examination, advice and treatment of her in that: 1) the defendants did not perform pregnancy tests on the plaintiff at any time prior to the tubal ligation; 2) the defendants did not perform other pertinent examinations or create a record of the plaintiff's medical history; 3) the defendants failed to discover and inform the plaintiff of her pregnancy before the beginning of her second trimester, thereby precluding the performance of an abortion; and 4) the defendants carried out an ineffective sterilization procedure on the plaintiff at a time when she was already pregnant, thereby falsely inducing her into believing or continuing to believe that she was not pregnant.
The plaintiff further alleges that if she had been informed that she was pregnant at any time before the end of the first trimester, she would have procured an abortion.
The plaintiff seeks to recover damages for the physical pain and suffering and emotional anguish incident to the birth of her twins, as well as for the financial obligations incurred from hospital and medical care. In addition, the plaintiff seeks to recover damages arising out of her responsibility for the costs of raising the twins.
By pleading dated October 10, 1990, the defendants have moved to strike the plaintiff's amended complaint. Specifically, the defendants seek to strike: 1) the plaintiff's entire amended complaint "on the grounds that a cause of action for wrongful birth has never been recognized by the Connecticut Supreme or Appellate Courts and recognition of such a cause of action would be contrary to the law of this state;" or 2) in the alternative, so much of the first, second and third counts as purport to state a claim for expenses incurred in connection with raising the twins "as they do not set forth recoverable elements of damage in a birth-related tort action under Connecticut Law." (See, Defendants' "Motion to Strike," dated October 10, 1990).
The defendants have filed a memorandum of law in support of their motion to strike.
The plaintiff has filed an "objection" to defendants' motion to strike together with a memorandum of law in support of that objection.
A motion to strike challenges the legal sufficiency of a pleading. Conn. Practice Bk. 152; Mingachos v. CBS, Inc., 196 Conn. 91, CT Page 4615 108 (1985). In ruling on a motion to strike, the court must take as admitted all well-pleaded facts, and those necessarily implied therefrom, and construe them in the manner most favorable to the pleader. Norwich v. Silverberg, 200 Conn. 367,370 (1986); Amodio v. Cunningham, 182 Conn. 80, 82 (1982). Where facts provable under the allegations of a complaint would support a cause of action, the motion to strike that pleading must fail. Mingachos v. CBS, Inc., 196 Conn. 91, 109 (1985); Alarm Applications Co. v. Simsbury Volunteer Fire Co., Inc.,179 Conn. 541, 545 (1980).
 [I]t is of no moment that the plaintiff may not be able to prove [her] allegations at trial or that the defendants might prove facts which operate to bar the plaintiff's claim. The sole inquiry at this stage of the pleadings is whether plaintiff's allegations, if proved, would state a basis for [relief] . . .
Doyle v. A P Realty Corp., 36 Conn. Sup. 126, 127 (Super.Ct. 1980).
A. Defendants' motion to strike plaintiff's entire amended complaint.
The defendants have moved to strike plaintiff's entire amended complaint "on the grounds that a cause of action for wrongful birth has never been recognized by the Connecticut Supreme or Appellate Courts and recognition of such cause of action would be contrary to the law of this state." (See, Defendants' "Motion to Strike" dated October 10, 1990).
In opposition to defendants' motion to strike, plaintiff urges that her complaint alleges sufficient facts to support a medical malpractice claim and that damages arising from defendants' negligence relating to the birth of the twins and the costs of raising them are properly pleaded and recoverable
"A medical malpractice action is a type of negligence action." Shufelt v. Corsaro, 5 CSCR 384 (May 15, 1990, Fuller, J.). "Negligence is a breach of duty" Petriello v. Kalman,215 Conn. 377, 382 (1990), quoting Urban v. Hartford Gas Co.,139 Conn. 301, 304 (1952). An essential allegation of negligence is the breach of a duty owed. Antrum v. Church's Fried Chicken, Inc., 40 Conn. Sup. 343, 346 (1985). The existence of a duty is a question of law. Petriello v. Kalman, 215 Conn. at 382.
 A physician is under a duty to his patient to exercise that degree of care, skill and CT Page 4616 diligence which physicians in the same general line of practice ordinarily possess and exercise in similar cases. Katsetos v. Nolan, 170 Conn. 637, 644-45, 368 A.2d 172 (1976). To prevail in a malpractice case, the plaintiff must establish through expert testimony both the standard of care and the fact that the defendant's conduct did not measure up to that standard. Pisel v. Stamford Hospital, 180 Conn. 314, 334, 430 A.2d 1 (1980).
Cross v. Huttenlocher, 185 Conn. 390, 393 (1985). "It is a generally recognized rule in malpractice cases that a plaintiff must plead and prove not only that injury occurred, but also that the defendant's negligence caused the injury. (Citations omitted)." (Emphasis in original). LaBieniec v. Baker,11 Conn. App. 199, 202 (1987).
Thus, it is well-established that:
 [t]here are four essential elements to a malpractice action. They are: (1) the defendant must have a duty to conform to a particular standard of conduct for the plaintiff's protection; (2) the defendant must have failed to measure up to that standard; (3) the plaintiff must suffer actual injury; and (4) the defendants conduct must be the cause of plaintiff's injury. D. Wright J. Fitzgerald, Torts 88; 79 ALR3d 915, 921; See, Shelnitz v. Greenberg, 200 Conn. 58, 65, 509 A.2d 1023
(1986); Pisel v. Stamford Hospital, supra, 334; Shenefield v. Greenwich Hospital Assn., 10 Conn. App. 239, 248, 522 A.2d 829 (1987).
LaBieniec v. Baker, 11 Conn. App. at 202-03.
The plaintiff maintains that her complaint sounds in negligence. The plaintiff's complaint alleges sufficient facts to support each essential element of a medical malpractice act, specifically:
 1) that the defendants had a duty to use due, reasonable and proper skill in examining, evaluating and treating plaintiff and to conduct reasonable examinations and diagnostic tests to determine her suitability as a candidate for sterilization;
2) that the defendants breached that duty in CT Page 4617 that they failed to conduct reasonable examinations and to perform a pregnancy test prior to the sterilization procedure;
3) that as a result of the defendants' negligent failure to conduct reasonable examinations and diagnostic tests and inform plaintiff of her pregnancy, plaintiff was not advised of her pregnancy so as to effectuate a timely abortion; and,
4) that as a result of defendants' negligent failure to diagnose the pregnancy, the plaintiff was precluded from procuring a timely abortion and was thereby forced to incur physical and emotional suffering, hospital and medical expenses, and child-rearing costs.
The Connecticut Appellate Court has recognized that "[i]f a plaintiff is proximately harmed by a delay in a definitive diagnosis, a physician may be held liable." See, LaBieniec v. Baker, 11 Conn. App. atr 203. Although research did not reveal any Connecticut cases involving a physician's negligent failure to diagnose pregnancy, other jurisdictions have considered such medical malpractice claims. See, e.g., Ziemba v. Sternberg,45 App.Div. 230, 357 N.Y.S.2d 265 (1974).
In Ziemba v. Sternberg, 45 App.Div. 230, 357 N.Y.S.2d 265
(1974), the New York Supreme Court, Appellate Division, recognized that a failure to diagnose a pregnancy gives rise to a cause of action for medical malpractice. Id. in Ziemba, plaintiffs, husband and wife, instituted a medical malpractice action seeking to recover for damages allegedly sustained as a result of defendant physician's failure to exercise ordinary and reasonable care in diagnosing and treating the plaintiff wife. Id. The Ziemba court concluded that when it is asserted that as one of the consequences of defendant physician's lack of reasonable care, plaintiff was not advised of her pregnancy so that she could terminate it within a reasonable time, as she was entitled to do, the damages subsequently sustained by the plaintiffs might be the natural consequences of defendant's malpractice for which recovery would lie. Id. at 269.
Subsequent decisions of the New York Supreme Court, Appellate Division, have reaffirmed the ruling in Ziemba and allowed a cause of action in negligence in conjunction with a negligent failure to diagnose pregnancy and the consequential foregoing of an abortion. See, e.g., S. v. Sapega,56 App.Div.2d 841, 391 N.Y.S.2d 79 (1977); Chapman v. Schultz, 47 App.Div.2d 806, 367 N.Y.S.2d 1018 (1975).
Various decisions of Connecticut courts have considered CT Page 4618 birth-related medical malpractice claims. See, e.g., Ochs v. Borrelli, 187 Conn. 253 (1987); Ahsan v. Olsen, 3 CSCR 55
(November 9, 1987, Wagner, J.); Woodruff v. Hoffman, 10 Conn. Law Trib. No. 15, p. 12 (Super.Ct. December 9, 1983, Jacobson, J.); Anonymous v. Hospital (1979-2), 35 Conn. Sup. 112 (Super. Ct. 1979); Anonymous v. Hospital (1976-11), 33 Conn. Sup. 125
(Super.Ct. 1976).
In Ahsan v. Olsen, 3 CSCR 55 (November 9, 1987, Wagner, J.), plaintiffs instituted a medical malpractice action against defendant physicians and hospital alleging the following facts. During plaintiff Ahsan's pregnancy, plaintiffs were concerned about a family history of an inherited disorder known as phocomelia. Plaintiffs had discussed the possibility of fetal testing with defendants and advised defendants that they would elect to terminate the pregnancy if it was determined that the fetus suffered from any genetic or chromosomal defects. Subsequently, two sonogram tests were performed by defendants, and plaintiffs were advised that the fetus was normal. On October 4, 1984, the plaintiff Usman Ahsan was born with severe birth defects, including phocomelia. The court (Wagner, J.), determined that plaintiffs had alleged sufficient facts to support a wrongful birth cause of action. Id.
Similarly, in Woodruff v. Hoffman, 10 Conn. Law Trib. No. 15, p. 12 (Super.Ct., December 9, 1982; Jacobson, J.), the court determined that plaintiff had alleged sufficient facts to support a cause of action for wrongful birth where plaintiff's had alleged that defendants had negligently failed to treat plaintiff mother as a high risk pregnancy patient, failed to advise plaintiff mother of the existence of amniocentesis and suggest such procedure, and failed to refer plaintiff mother for genetic counselling, and that as a result of defendants' negligence, plaintiff infant was born with severe physical deficiencies. Id.
In Ochs v. Borrelli, 187 Conn. 253 (1982), the Connecticut Supreme Court considered whether the parents of a child conceived after an unsuccessful sterilization procedure could be compensated for the costs of rearing the child when the physician who performed the procedure was found to have been negligent. Id. The Ochs court rejected defendants' assertion that public policy required the court "to hold that the birth of a child is always a blessing to its parents and that this benefit must, as a matter of law, totally offset concomitant financial burdens." Id. at 256, The Connecticut Supreme Court stated:
 This court has not, before today, had the opportunity to determine the boundaries of a CT Page 4619 cause of action for wrongful conception. The question has, however, arisen with some frequency in other jurisdictions. . . Courts have responded by staking out a broad range of positions from rejection of any damages for the birth of a healthy child following a failed sterilization procedure; (citations omitted); to allowance of child-rearing expenses for the negligent birth of an unplanned child. (Citations omitted).
In our view, the better rule is to allow parents to recover for the expenses of rearing an unplanned child to majority when the child's birth results from negligent medical care. The defendants ask us to carve out an exception, grounded in public policy, to the normal duty of a tortfeasor to assume liability for all that he has proximately caused. (Citations omitted). But public policy cannot support an exception to tort liability when the impact of such an exception would impair the exercise of a constitutionally protected right. It is now clearly established that parents have a constitutionally protected interest located "within the zone of privacy created by several fundamental constitutional guarantees;" Griswold v. Connecticut, 381 U.S. 479, 485,85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Roe v. Wade,410 U.S. 113, 153, 93 S.Ct. 1409, 35 L.Ed.2d 694 (1973); to employ contraceptive techniques to limit the size of their family. The defendants' general argument of public policy is therefore unpersuasive. (Citation omitted).
(Emphasis added). Ochs v. Borrelli, 187 Conn. at 256-58.
The Connecticut Supreme Court went on to reject defendants' additional claims that: 1) to allow recovery of damages would erroneously equate the birth of a child with an injury to its parents; and 2) the damages awarded were "too speculative to be permitted." Id. at 259. The court reasoned:
 The defendants' initial argument founders on its premise that a recognition of the economic costs of parenthood is necessarily a negative judgment on the child who occasions them. We may take judicial notice of the fact that raising a child from birth to maturity is a costly enterprise, and hence injurious, although it is an experience that abundantly recompenses most parents with intangible rewards. There can be no affront to public policy in our recognition CT Page 4620 of these costs and no inconsistency in our view that parental pleasure softens but does not eradicate economic reality. The plaintiff's testimony confirming their love for Catherine should not become a reason for denying them financial relief.
 It bears emphasis, furthermore, that the trial court did not impose upon the defendants the total burden of economic costs of the plaintiffs' parenthood. The trial court, with the plaintiff's concurrence, instructed the jury to reduce potentially recoverable child-rearing expenses "by the value of the benefits conferred on the plaintiff by having and raising the child. Such benefits may be the satisfaction, the fun, the joy, the companionship, and the like, which the plaintiff[s] as parents have had and will have in the rearing of the child and which make economic expenses worthwhile," In effect, rather than invoking a per se rule that the benefits always outweigh costs, or costs always outweigh benefits, the court adopted a case-by-case balancing test of the Restatement (Second) of Torts. That rule provides that "[w]hen the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable." 4 Restatement (Second) Torts (1979) 920; See, Sherlock v. Stillwater Clinic, supra, 176; Mason v. Western Pennsylvania Hospital, supra, 362-63.
Id. at 259-60. The court further reasoned:
 Although we recognize that this balancing test requires the jury to mitigate economic damages by weighing them against noneconomic factors, we reject the defendants' claim that such a weighing process is "impermissibly speculative." We see no basis for distinguishing this case from other tort cases in which the trier of fact fixes damages . . .
Id. at 260.
In the instant case, plaintiff has alleged sufficient facts to support a cause of action for medical malpractice. Further, CT Page 4621 damages arising from defendants' negligence relating to the birth of the twins and the costs of raising them are properly pleaded and recoverable. Accordingly, defendants' motion to strike plaintiff's entire amended complaint is denied.
B. Defendants' motion to strike, in the alternative, that portion of each count of plaintiff's complaint stating claims relating to child-rearing expenses.
The defendants argue, in the alternative, that the court should strike that portion of each count of the amended complaint stating claims relating to child-rearing expenses on the ground that they do not set forth recoverable elements of damage in a birth-related tort action under Connecticut law.
A party who wishes to contest the legal sufficiency of the allegations of an entire complaint, or of any one or more counts thereof, may do so by filing a motion to strike the contested pleading. Conn. Practice Bk. 152; Mingachos v. CBS, Inc.,196 Conn. at 108. One or more paragraphs of a complaint or count may be attacked only when a separate cause of action is attempted to be stated therein. Bourquin v. Meslungen,5 CSCR 721, 722, (September 4, 1990, Miano, J.); Ahsan v. Olsen,3 CSCR 55, 55 (November 9, 1987, Wagner, J.); Shrader v. Rosenblatt,26 Conn. Sup. 182, 183 (Super.Ct. 1965); See, also, Donovan v. Davis, 85 Conn. 394, 397 (1912).
The plaintiff seeks to recover for the costs of raising the twins as an element of damages arising out of the medical malpractice claim. See, e.g., Anonymous v. Hospital (1979-2),35 Conn. Sup. 112 (Super.Ct. 1979).
Inasmuch as plaintiff has not pleaded a separate cause of action for child-rearing expenses, defendants' motion to strike that portion of each count of plaintiff's complaint relating to damages for the costs of raising the twins is not properly before this court and therefore is denied.
HENNESSEY, J.