[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM ON MOTION TO DISMISS #105
On August 30, 1994, the plaintiffs, Peter and Judith Quinn, allege that they engaged the defendants, Kenneth P. Blau, M.D. and Patricia Whitcombe, M.D., physicians practicing in obstetrics and gynecology, to deliver prenatal care to the plaintiff, Judith, during her first pregnancy. The plaintiffs allege that, in the sixteenth week of the pregnancy, the plaintiff Judith underwent a timely Alpha-Fetoprotein ("AFP") test offered and performed by the defendants. The plaintiffs allege that the test results revealed an increased risk of the likelihood that the child may be born with Down's Syndrome, a genetic defect, and that the defendants failed to communicate these results to the plaintiffs.
On October 4, 1996, the plaintiffs, Judith Quinn, Peter CT Page 13436 Quinn, and Melanie Quinn, filed a four count complaint against the defendants Kenneth P. Blau, M.D. and Patricia Whitcombe, M.D. In count one of the complaint, the plaintiffs, Judith and Peter, allege negligence by the defendants' failure to inform them of the AFP test results and to offer further testing, genetic counseling, and the alternative treatment, such as termination of the pregnancy. The plaintiffs further allege that, as a result of the defendants' negligence, the plaintiff, Judith, I gave birth to a child, Melanie, with Down's Syndrome, causing the plaintiffs the expense of the required extraordinary care and training of Melanie until she reaches majority, and pain and suffering. In count two of the complaint, the plaintiffs, Judith and Peter, allege that as a result of the defendants' negligence, they were deprived of the opportunity to give their informed consent concerning the continued care and treatment of the pregnancy, thus precluding the choice to terminate the pregnancy. In count three of the complaint, the plaintiff, Melanie, alleges that but for the defendants' alleged negligence she would not have been born. She further alleges that as a result of her birth she has experienced and will continue to experience pain and suffering attributable to her genetic defect, and that she will continue to incur extraordinary medical, living and training expenses after she reaches the age of eighteen. In count four of the complaint, the plaintiff, Peter, alleges a cause of action for negligent infliction of emotional distress. Specifically, he claims that he suffered severe emotional distress upon learning, at the moment of her birth, that his daughter was born with Down's Syndrome.
On February 6, 1997, the defendants filed this motion to strike all four counts of the complaint. The defendants move to strike count one on the ground that Connecticut does not recognize a cause of action for wrongful life, and, alternatively, if it does, the plaintiffs have not properly pleaded such a cause of action. The defendants move to strike count two on the ground that an informed consent action cannot be based on alleged misdiagnosis of a prenatal test that allegedly leads to wrongful birth. The `defendants move to strike count three on the ground that Connecticut does not recognize an action for wrongful life brought by the child. Finally, the defendants move to strike count four on the ground that Connecticut does not allow recovery for bystander emotional distress in medical malpractice cases.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to CT Page 13437 state a claim upon which relief can be granted." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp.,240 Conn. 576, 580, 693 A.2d 293 (1997). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Id.
The complaint is construed "in the manner most favorable to sustaining its legal sufficiency." Kelly v. Figueiredo,223 Conn. 31, 610 A.2d 1296 (1992), quoting Michaud v. Wawruck,209 Conn. 407, 408, 551 A.2d 738 (1988). The motion to strike "admits all facts well pleaded." Napoletano v. Cigna Healthcare ofConnecticut, Inc., 238 Conn. 216, 232, 680 A.2d 127 (1996). "The court must construe the facts in the complaint most favorably to the plaintiff." Faulkner v. United Technologies Corp., supra,240 Conn. 576, 580. "This includes the facts necessarily implied and fairly provable under the allegations." Forbes v. Ballaro,31 Conn. App. 235, 239, 624 A.2d 389 (1993).
The defendants move to strike count one of the plaintiffs' complaint on the ground that Connecticut does not recognize a cause of action for wrongful life. The plaintiffs counter that count one of the complaint sounds in negligence, specifically, negligence in medical malpractice for wrongful birth, and not for wrongful life.
Connecticut courts have recognized a cause of action for wrongful birth brought by parents. "`Wrongful life' generally refers to actions brought on behalf of children, as distinguished from `wrongful birth,' which generally refers to actions brought by parents." Woodruff v. Hoffman, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 196095 (December 9, 1983, Jacobson, J.) (10 Conn. Law Trib. 15, p. 12). In a wrongful birth cause of action, "[t]he plaintiff-parent state[s] a cause of action in her own right predicated upon a breach of duty flowing from defendants to themselves, as prospective parents, resulting in damage to plaintiffs for which compensation may be readily fixed." Id.
Wrongful birth is the negligence or medical malpractice based on the negligent performance of a medical procedure by not reporting test results thus injuring parents by foreclosing the opportunity for them to make an informed decision whether to continue or terminate the pregnancy. Id. "A medical malpractice action is a type of negligence action." Burns v. Hanson, Superior Court, judicial district of Middlesex at Middletown, Docket No. 72342 (March 8, 1995, Stanley, J.) (13 CONN. L. RPTR. 593). CT Page 13438 "Negligence is a breach of duty." Petriello v. Kalman,215 Conn. 377, 382, 576 A.2d 474 (1990). "The existence of a duty is a question of law . . . ." Zamstein v. Marvasti, 240 Conn. 549,558, 692 A.2d 781 (1997). "A physician is under a duty to his patient to exercise that degree of care, skill and diligence which physicians in the same general neighborhood and in the same general line of practice ordinarily possess and exercise in like cases." Katsetos v. Nolan, 170 Conn. 637, 644-45, 368 A.2d 172
(1976); see also Wasfi v. Chaddha, 218 Conn. 200, 208,588 A.2d 204 (1991).
"To prevail in a malpractice case the plaintiff must establish through expert testimony not only the standard of care but also that the defendant's conduct did not measure up to that standard." Pisel v. Stamford Hospital, 180 Conn. 314, 334,430 A.2d 1 (1980). Four essential elements to a malpractice action are: "(1) the defendant was obligated to conform to a recognized standard of care, (2) the defendant deviated from that standard, (3) the plaintiff suffered some injury, and (4) the defendant's act in departing from the standard of care caused the plaintiff's injury." Shegog v. Zabrecky, 36 Conn. App. 737, 744, 604 A.2d 771
(1995); see also Martinez v. Hartford Hospital, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 330196 (May 21, 1991, Hennessey, J.) (4 CONN. L. RPTR. 57,6 CSCR 565).
The only appellate case related to the issue at hand is Ochsv. Borrelli, 187 Conn. 253, 445 A.2d 883 (1982), wherein the court recognized a negligence claim for wrongful conception. The court allowed damages for the cost of rearing a child conceived after an unsuccessful sterilization procedure where the physician who performed the procedure was found negligent. Applying Ochs to the present case, it follows that parents should also be allowed to claim a wrongful birth cause of action to recover the extraordinary expenses for a child with an unanticipated defect, Down's Syndrome, when the birth of such a child results from negligent medical care. "In our view, the better rule is to allow parents to recover for the expenses of rearing an unplanned child to majority when the child's birth results from negligent medical care." Id., 258.
In Woodruff v. Hoffman, "the court determined that plaintiff had alleged sufficient facts to support a cause of action for wrongful birth where the plaintiffs had alleged that defendants had negligently failed to treat plaintiff mother as a high risk pregnancy patient, failed to advise plaintiff mother of the CT Page 13439 existence of amniocentesis and suggest such procedure, and failed to refer plaintiff mother for genetic counselling, and that as a result of defendants' negligence, plaintiff infant was born with severe physical deficiencies." Martinez v. Hartford Hospital,supra, 6 CSCR 565, 567, citing Woodruff v. Hoffman, supra, 10 Conn. Law Trib. No. 15, p. 13. In Ahsan v. Olsen, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 353105 (July 2, 1991, Wagner, J.) (3 CSCR 55), the court determined that the plaintiffs alleged sufficient facts to support a wrongful birth cause of action upon the following: the plaintiffs were concerned about a family history of the inherited disorder phocomelia; they discussed the possibility of fetal testing with the defendants and advised the defendants that they would elect to terminate the pregnancy if it was determined that the fetus suffered from any genetic or chromosomal defects; the defendants performed two sonogram tests; the defendants advised the plaintiffs that the fetus was normal; the child was born with severe birth defects, including phocomelia. In Ahsan, the court found that a wrongful birth action "is an action brought by parents against a physician who fails to warn them of an increased possibility that their child will be born with birth defects, thereby precluding an informed decision as to whether or not they should have the child." Ahsan v. Olsen, supra,4 CONN. L. RPTR. 282, 3 CSCR 55.
In looking to the facts pleaded and construing them in the manner most favorable to the pleader, count one of the complaint reads in negligence for wrongful birth, "recognized as a proper cause of action in . . . [decisions] of this court." Id. The facts alleged in the present case are very similar to those inAhsan and Woodruff, where both courts recognized the claim of negligence for wrongful birth.
In the present case, count one of the plaintiffs' complaint alleges that the defendants owed a professional duty of care to the plaintiffs within a doctor-patient relationship for prenatal care of the pregnancy. The plaintiffs, also, allege that this duty of care included the duty to inform the plaintiffs of the test results and to offer further testing, counseling, advice and treatment such as abortion. The plaintiffs further allege that the defendants' failure to do so constitutes a breach of that duty which caused the plaintiff Judith to carry to term and give birth to a child with Down's Syndrome. Additionally, the plaintiffs allege that the defendants' alleged negligence in failing to inform and counsel them regarding the results of the CT Page 13440 AFP test results deprived them of the opportunity to make an informed decision on whether or not to terminate the pregnancy. Thus, the plaintiffs' complaint contains the necessary elements to assert a cause of action in negligence for wrongful birth. Accordingly, the defendants' motion to strike count one of the plaintiffs' complaint is denied.
The defendants move to strike count two of the plaintiffs' complaint on the ground that an informed consent action cannot be based on an alleged misdiagnosis of a pre-natal test that allegedly leads to a wrongful birth. The defendants argue that an action for informed consent arises only out of an affirmative violation of the plaintiff's physical integrity or the failure of a health care provider to inform of a risk related to an affirmative treatment of the patient's person, such as an invasive test or surgical procedure. The defendants further argue that the lack of informed consent theory does not apply to the present case where the alleged undisclosed information relates to the condition of pregnancy and not the affirmative treatment of the pregnancy. The defendants argue that the treatment of a pregnant patient in the course of care during a pregnancy does not constitute affirmative treatment.
The plaintiffs respond that Connecticut recognizes a cause of action for lack of informed consent in a claim for negligence for medical malpractice. The plaintiffs argue that a cause of action for lack of informed consent requires: a duty by the physician to disclose material information regarding proposed treatment; failure to disclose that information; and resulting damages caused by the failure to disclose. The plaintiffs further argue that, because of the defendants' failure to disclose, they were deprived of their Constitutional right to choose whether to have an abortion.
Connecticut courts have made a distinction between a cause of action for lack of informed consent related to battery, which is the basis of the defendants' argument, and a cause of action for lack of informed consent that sounds in negligence, which the plaintiffs allege. "The cause of action based on lack of informed consent was first recognized by our Supreme Court in Keenan v.Yale-New Haven Hospital, 167 Conn. 284, 285, 355 A.2d 253 (1974). In Cross V. Huttenlocher, 185 Conn. 390, 440 A.2d 952 (1981), the court found error in not charging the jury on the failure to warn the plaintiff and her family as to the possible side effects of using a drug he prescribed." Weidl v. Gfeller, Superior Court, CT Page 13441 judicial district of Hartford-New Britain at Hartford, Docket No. 351404 (September 3, 1992, Burns, J.). "Where a lack of informed consent is alleged, the jury must determine whether the defendant has met his obligation to inform the plaintiff adequately, in accordance with the `lay' standard as set forth in Logan v.Greenwich Hospital Assn. . . . . This standard imposes upon the physician a duty, the breach of which constitutes malpractice. Consequently, where a patient seeks recovery against a physician based upon a lack of informed consent, he is bringing a `malpractice' action as contemplated by 52-584." Lambert v.Stovell, 205 Conn. 1, 6, 529 A.2d 710 (1987).
"The essential elements of a cause of action based upon a lack of informed consent is a breach of duty by the defendant and a causal connection between that breach and the harm to the plaintiff. Lambert v. Stovell, supra, 205 Conn. 1. . . . Such standard of medical practice has been held to apply to the sufficiency of disclosure. The accepted view is that the sufficiency of disclosure is a matter to be measured against acceptable medical practice. . . . In Logan, the court held that all viable alternatives [must] be disclosed even though some involve more hazard than others. [Logan v. Greenwich HospitalAss'n., supra, 191 Conn.] 295." (Internal quotation marks omitted.) Weidl v. Gfeller, supra, Superior Court, Docket No. 351404." [A] risk is material when a reasonable person, in what the physician knows and should have known the plaintiff's position to be, would attach significance to the risk in deciding whether to forego the proposed treatment or not." Hammer v. MountSinai Hospital, 25 Conn. App. 702, 711, 596 A.2d 1318 (1991).
In LaBieniec v. Baker, 11 Conn. App. 199, 526 A.2d 1341
(1987), a medical malpractice action alleging failure to diagnose the plaintiff's cancer, the court found that "[i]f a plaintiff is proximately harmed by a delay in a definitive diagnosis, a physician may be held liable. . . ." Id., 203. "An allegation that a physician delayed in rendering a definitive diagnosis is essentially a claim that the physician failed to warn his or her patient of medical danger. . . . This duty is discharged when the patient is warned of the danger." Vernali v. Daukis, Superior Court, judicial district of Middlesex at Middletown, Docket No. 58428 (June 25, 1992, Arena, J.) (8 CONN. L. RPTR. 630,7 CSCR 1067, 1068), citing Connell v. Colwell, 214 Conn. 242, 255,571 A.2d 116
(1990). The court in Vernali addressed the issue of whether a physician has a continuing duty to inform a patient of the physician's diagnosis. The court "decided that [the defendant-physician's] duty to CT Page 13442 disclose his diagnosis that [the plaintiff-patient] was at a high risk of suffering an attack of glaucoma continued until [the plaintiff-patient] was informed that he had glaucoma . . . ."Vernali v. Daukis, supra, 8 CONN. L. RPTR. 630,7 CSCR 1068.
"Under [the lay standard of disclosure] there is a duty to disclose such information as a reasonable patient would consider material to the decision whether or not to undergo treatment or diagnosis." (Internal quotation marks omitted.) Peterson v. YaleNew Haven Hospital, Superior Court, judicial district of New Haven at New Haven, Docket No. 337617 (August 13, 1996, Corradino, J.), quoting Logan v. Greenwich Hospital Assn., supra,191 Conn. 282, 292. In Peterson, where the defendant physicians allegedly "failed to respond appropriately to an . . . ultrasound test which apparently would have shown the presence of a tumorous mass," the court found that "[t]he factual elements on which that duty is to be analyzed . . . in relation to the disclosure of the . . . report, seem to be intrinsically intertwined with the question of whether the doctor defendants here were negligent in failing to act upon the information they learned in the . . . report. . . . [I]t could be argued that if in fact the report contained `material' information the defendants should have acted on, ipso facto they should have made disclosure to the patient of this information because that is a standard of care requirement of which practicing physicians should be aware." Peterson v. Yale-New Haven Hospital, supra, Superior Court, Docket No. 337617. "Once the existence of a duty to inform has been established, the plaintiff must then prove the extent or degree of disclosure in accordance with the lay standard. . . . The physician is thus charged with the duty to disclose to the patient that information that a reasonable patient would have found material for making a decision whether to embark upon a contemplated course of therapy." (Citations omitted; internal quotation marks omitted.) Gemme v. Goldberg,31 Conn. App. 527, 543-44, 626 A.2d 318 (1993) (where the plaintiff alleged that the defendant orthodontists failed to discuss possible alternatives to major jaw surgery which resulted in serious complications.).
In the present case, the plaintiffs have alleged in count two of the complaint that there was a duty owed by the defendants to the plaintiffs. That duty was to inform them of the AFP test results as a part of the pre-natal care and treatment of the pregnancy under the accepted standard of care, to inform them of the consequences implied by the test results, and to offer CT Page 13443 treatments, tests, and counseling based upon such a test result. As in Peterson, where the defendant was liable for the failure to report test results, the defendants' failure in the present case to warn the plaintiffs of the implications of the tests results deprived them of the opportunity to make an informed choice regarding further treatment or what that treatment might be, i.e., further testing, continuing, or terminating the pregnancy. The defendants' failure to warn the plaintiffs of the risks involved in delivering a healthy child based upon the AFP test results, and their failure to inform the plaintiffs of their options for treatment in light of the these results, constitutes a cause of action for lack of informed consent as found in the cases earlier discussed. Accordingly, the defendants' motion to strike count two of the plaintiff's complaint is denied.
The defendants move to strike count three of the plaintiffs' complaint on the ground that Connecticut does not recognize a cause of action in wrongful life. The plaintiffs counter that count three of the complaint sounds in traditional negligence, and that the factual allegations conform to the essential elements of a negligence action: duty, breach of that duty, and that breach being the cause of a resulting injury.
"To date, no Connecticut Supreme Court decision addresses the propriety of a claim for `wrongful life.' `Wrongful life' generally refers to actions brought on behalf of children . . . . In a wrongful life claim [t]he child does not allege that the physician's negligence caused the child's deformity. Rather, the claim is that the physician's negligence — his failure to adequately inform the parents of the risk — has caused the birth of the deformed child. The child argues that but for the inadequate advice, it would not have been born to experience the pain and suffering attributable to the deformity." (Internal quotation marks omitted.) Woodruff v. Hoffman, supra, 10 Conn. L. Trib. 15, p. 13. "The child's claim is not that the defendant caused the defects but that the breach of duty led proximately to the infant's birth." Id. The duty breached is "the doctor's duty to inform the parents of possible risk [of] injuries to the plaintiff-infant who is a foreseeable victim of the physician's negligence." Id. Here, the court recognized a claim for wrongful life and found that "an examination of the complaint [revealed] that the factual allegations pleaded conform to traditional tort doctrine." Id. Thus, the court denied the defendant's motion to strike. CT Page 13444
In Ahsan v. Olsen, supra, 3 C.S.C.R. 55, the court, relying on Woodruff, noted that Connecticut was one of only four jurisdictions which has recognized a wrongful life cause of action. In the absence of a definitive ruling by the Connecticut Supreme Court as to the existence of a wrongful life cause of action in Connecticut, the court looked to the claim for sufficient facts to support such a cause of action. While recognizing a cause of action for wrongful life, the court inAhsan found that the plaintiff failed to allege that the defendant's negligence caused his birth, "which is the essential allegation in such a cause of action." Id. In the present case, the factual allegations are sufficient to satisfy traditional tort elements. The plaintiffs' complaint, in count one, paragraph 8, alleges that the defendants' negligence was the proximate cause of the birth of the plaintiff Melanie.
There is only one case, Donnelly v. CandlewoodObstetric-Gynecological Associates, P.C., Superior Court, judicial district of Danbury, Docket No. 302096 (June 8, 1992, Moraghan, J.) (6 CONN. L. RPTR. 532), which failed to follow the above cases. In Donnelly, the plaintiff's complaint alleged wrongful life after the parents were informed by the physicians, who had performed several tests, "that the fetus' liver was not in the correct position, [but] she would otherwise give birth to a normal child." Id. On the basis of this information, the child was carried to term. The child, however, was born with multiple defects. Here, the court refused to recognize wrongful life as a cause of action stating: "As a result of the philosophical problems inherent in a cause of action for wrongful life not being amenable to resolution in a court of law, this court declines to recognize such an action."Id. The inherent problem referred to by the court is the philosophical dilemma of placing a value on a defective life versus no life.
The court in Donnelly relied primarily on out-of-state authority in making its decision. The defendants, in the present case, rely on the same rationale and out-of state authority for their argument. The Donnelly court failed to speak to the rationale of the Woodruff court, which found suspect the argument that there is a philosophical question inherent in this cause of action. "There is nothing illogical in a plaintiff saying `I'd rather not be suffering as I am, but since your wrongful conduct preserved my life, I am going to take advantage of my regrettable existence to sue you.'" Woodruff v. Hoffman, supra, 10 Conn. L. Trib. 15, p. 13. The court in Donnelly also did not apply the CT Page 13445 holding in Ochs v. Borrelli, supra, 187 Conn. 253, where the court found no difficulty in placing a value on the cost of raising a child brought into existence through the negligence of physicians performing a sterilization procedure. "The Ochs court rejected defendants' assertion that public policy required the court `to hold that the birth of a child is always a blessing to its parents and that this benefit must, as a matter of law, totally offset concomitant financial burdens.'" Martinez v.Hartford Hospital, supra, 6 CSCR 565, quoting Ochs v.Borrelli, supra, 187 Conn. 256.
The factual allegations of the complaint in the present case conform to traditional negligence elements. The plaintiffs allege that the defendants owed a duty to inform the plaintiffs of the status of the pregnancy and the condition of the fetus as part of the prenatal care; that the defendants breached that duty by failing to inform the plaintiffs of the results of the AFP test and by failing to offer further testing, counseling, and options such as abortion; that as a result of the defendants' breach of duty, the plaintiff Melanie, a child with Down's Syndrome, was born. The factual allegations of the plaintiffs' complaint are sufficient to support a cause of action in negligence for wrongful life as recognized in Woodruff and Ahsan. Thus, the defendants' motion to strike count three of the plaintiffs' complaint is denied.
In count four of the plaintiffs' complaint, the plaintiff Peter Quinn claims negligent infliction of emotional distress suffered when he witnessed Melanie's birth and simultaneously learned that she was born with Down's Syndrome. The defendants argue that Connecticut does not recognize a cause of action for bystander emotional distress in medical malpractice actions. The plaintiffs counter that such a claim is recognized as held inClohessy v. Bachelor, 237 Conn. 31, 675 A.2d 852 (1996), and that the facts alleged meet the Clohessy criteria.
The court in Clohessy, recognized a cause of action in bystander emotional distress under the rule of reasonable foreseeability provided the bystander satisfy certain limiting conditions. Wildman v. Connecticut Allergy and Asthma Associates, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 334473 (December 16, 1996, Levine, J.) (18 CONN. L. RPTR. 453, 454), citing Clohessy v. Bachelor, supra,237 Conn. 56. In Wildman, the court reviewed the holdings of Clohessy andMaloney v. Conroy, 208 Conn. 392, 545 A.2d 1059 (1988), regarding CT Page 13446 the issue of whether bystander emotional distress is recognized as a cause of action in medical malpractice cases. The Wildman
court concluded that "the rule of the [Maloney] case is clear and explicit. Until it is reversed, changed or modified by the Supreme Court, this court must follow it. . . . Since Maloney has not been overruled, the plaintiff may not assert a claim for bystander emotional distress arising out of alleged acts of medical malpractice . . . ." (Citations omitted.) Wildman v.Connecticut Allergy and Asthma Associates, supra,18 CONN. L. RPTR. 456. "On the one hand Clohessy appears to articulate a universal test for a claim of bystander emotional distress. On the other hand, in Maloney v. Conroy, 208 Conn. 392,545 A.2d 1059 (1988), the Supreme Court handed down a clear, bright line holding that a bystander to medical malpractice may not recover for emotional distress. . . . [T]he [Clohessy] court did not expressly overrule Maloney." (Internal quotation marks omitted.)Wildman v. Connecticut Allergy and Asthma Associates, supra,18 CONN. L. RPTR. 454; see also Colon v. Barczak, Superior Court, judicial district of New London, Docket No. 537729 (July 17, 1997, Hurley, J.) (20 CONN. L. RPTR. 121) (where the defendant was granted summary judgment on the plaintiff's claim for bystander emotional distress suffered when he observed his wife and unborn fetus die due to the alleged negligent care of defendant doctor).
Since Clohessy, there has not been a definitive ruling by the Supreme Court of Connecticut on the issue of bystander emotional distress as a cause of action in a medical malpractice claim. The holding by the court in Wildman, in its interpretation of Maloney
and Clohessy, remains persuasive. Accordingly, the defendants, motion to strike count four of the plaintiffs' complaint is granted.
STODOLINK, J.