[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO STRIKE
The present case is a medical malpractice action arising out CT Page 2500 of the birth of Molly Burns, a healthy baby girl. On September 16, 1994, the plaintiffs, Patricia and William Burns, husband and wife, filed a three-count Amended Complaint against the defendants, Thomas M. Hanson, M.D. and Thomas M. Hanson, M.D., P.C. Therein, the plaintiffs allege, inter alia, that the defendants were negligent in advising Patricia Burns that she was sterile without first properly determining that she was, and, in failing to diagnose Patricia Burns' condition after she became pregnant.
Count one of the amended complaint seeks compensatory damages from the defendant, Thomas M. Hanson, M.D., on the ground that, as a result of his alleged negligence and carelessness, the plaintiff, Patricia Burns:
 suffered and will continue to suffer severe physical injuries, including but not limited to:
1. carrying a pregnancy to term;
2. giving birth to a child;
3. raising a child;
4. aggravation of her multiple sclerosis;
5. shock and injury to her nerves and nervous system
6. and other severe and serious physical injuries;
and on the ground that the plaintiffs, Patricia and William Burns:
 suffered, and will continue to suffer, mental and emotional pain and distress as a result, inter alia, of being unable to attend to and adequately participate in the parenting of Molly Burns and Megan Burns. This pain and distress caused them extreme suffering during the course of Pat Burns' pregnancy and will continue to disrupt their ability to enjoy life's pleasures, as well as their ability to enjoy the social and recreational pleasure of being parents.
Count two of the amended complaint seeks compensatory damages from the defendant, Thomas M. Hanson, M.D., on the ground that the plaintiffs, as the parents of Molly Burns: CT Page 2501
 have expended, and will continue to expend, monies for the care, education, welfare and maintenance of their daughter Molly until such time as she reaches the age of twenty-one.
Finally, count three of the amended complaint seeks compensatory damages from the defendant, Gynecology and Infertility, P.C., a/k/a Thomas M. Hanson, M.D., P.C., on the ground that:
 the aforesaid acts of omission and commission by its agent/employee, Thomas M. Hanson, M.D. . . . [caused the plaintiffs to] suffer the injuries, damages and losses set forth above.
On November 23, 1994, the defendants filed a Motion to Strike all of the claims of the plaintiff, William Burns, on the ground that he has no viable cause of action under Connecticut law, and count two of the amended complaint, on the ground that the cost of raising a healthy child is not a compensable element of damages under Connecticut law. On December 7, 1994, the plaintiffs filed an Objection to the defendant's motion to strike. Both parties have filed memorandums of law in support of their respective positions.
A motion to strike, which challenges the legal sufficiency of a pleading; Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989); may be used "to test whether Connecticut is `ready to recognize some newly emerging ground of liability.'" DurhamAqueduct Co. v. C.R. Burr Co., 8 Conn. L. Trib. No. 13, pp. 11-12 (Super.Ct., Nov. 30, 1981) (Higgins, J.), quoting I E. Stephenson, Connecticut Civil Procedure § 116, p. 470 (1970). In ruling upon a motion to strike, the court must take as admitted all well-pleaded facts, and those necessarily implied therefrom; Norwich v. Silverberg, 200 Conn. 367, 370,511 A.2d 336 (1986); and must construe those facts in the light most favorable to the pleader. Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1988). "If any facts provable under the express and implied allegations in the plaintiff's complaint support a cause of action . . . the complaint is not vulnerable to a motion to strike." Bouchard v. People's Bank,219 Conn. 465, 471, 594 A.2d 1 (1991).
The defendants have moved to strike the claims of the plaintiff, William Burns, on the ground that, because he has CT Page 2502 failed to allege that the defendants owed him a duty of care, he has failed to set forth a legally sufficient negligence claim. In response, the plaintiffs argue that their amended complaint does affirmatively aver the existence of a duty to William Burns, in that it avers that the defendant, Thomas M. Hanson, M.D., "fail[ed] to properly inquire about and inform the Burns as to their continued need to use birth control, and the risks attendant to their failure to do so." Amended Complaint ¶ 19(e).
"A medical malpractice action is a type or negligence action." Martinez v. Hartford Hospital, 4 CONN. L. RPTR. 57,6 CSCR 565, 566 (1991) (Hennessey, J.), quoting Shufelt v. Corsaro,
2 CONN. L. RPTR. 3, 5 CSCR 384, 384, (1990) (Fuller, J.). There are four essential elements to a malpractice action. They are:
 (1) the defendant must have a duty to conform to a particular standard of conduct for the plaintiff's protection; (2) the defendant must have failed to measure up to that standard; (3) the plaintiff must suffer actual injury; and (4) the defendant's conduct must be the cause of the plaintiff's injury.
(Citations omitted.) LaBieniec v. Baker, 11 Conn. App. 199,202-03, 526 A.2d 1341 (1987). Thus, a plaintiff may not prevail in a negligence action absent proof of a duty. Id. See also Coburn v.Lenox Homes, Inc., 186 Conn. 370, 375, 441 A.2d 620 (1982). A plaintiff, moreover, cannot sue on a breach of duty owed to another. Neal v. Shiels, Inc., 166 Conn. 3, 12-13, 347 A.2d 102
(1974).
"The general hornbook rule is that there can be no actionable negligence on the part of a physician where there is no physician-patient relationship." Sackter v. St. Onge, 8 CONN. L. RPTR. 614, 8 CSCR 494, 494 (1993) (Wagner, J.), citing Louisell and Williams, Medical Malpractice (1988), § 8.02. "In Connecticut, malpractice has been defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied . . . in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of thoseservices . . . ." (Emphasis in original.) Sackter v. St. Onge,
supra, 8 CSCR 494, citing Davis v. Margolis, 215 Conn. 408, 415,576 A.2d 489 (1990); Barnes v. Schlein, 192 Conn. 732, 735,473 A.2d 1221 (1984). For this reason, it has been held that "only CT Page 2503 the patient or recipient of medical services . . . ha[s] a legally sufficient malpractice cause of action." Sackter v. St.Onge, supra, 8 CONN. L. RPTR. 614, 8 CSCR 494.
In the present case, the amended complaint fails to allege that the plaintiff, William Burns, was a patient of the defendants, or that the defendants otherwise owed a duty of care to him. Accordingly, the plaintiffs have failed to allege a legally sufficient claim of negligence against the defendants, insofar as the claims of William Burns are concerned. The claims of the plaintiff, William Burns, are hereby stricken.
Additionally, the defendants argue that the claims of the plaintiff, William Burns, must fail, because they constitute a, claim for bystander emotional distress, which is not permitted in Connecticut in the medical malpractice context. In response, the plaintiffs urge the court to adopt in this case the forseeability of the harm analysis traditionally utilized in negligence actions. In this regard, the plaintiffs argue that the claims of William Burns do not constitute a bystander emotional distress claim, because his injuries are far more forseeable, concrete and cognizable than the injuries of other bystanders to medical malpractice, in light of the fact that he is a participant in every aspect of the financial and other responsibilities connected with raising and nurturing a child, rather than aspectator to the injuries which have occurred and which will continue to occur daily.
The Connecticut Supreme Court has consistently refused to recognize a cause of action for bystander emotional distress, particularly in the context of medical malpractice actions. InStrazza v. McKittrick, 146 Conn. 714, 156 A.2d 149 (1959), the supreme court held that, while a plaintiff may recover for emotional distress caused by fear of injury to herself, there could be no recovery "for injuries occasioned by fear of threatened harm or injury to the person or property of another,"
because "[s]uch injuries are too remote in the chain of causation to permit recovery." (Emphasis added.) Id., 718-19. The rule articulated by the Strazza court is absolute and unambiguous: "Even where a plaintiff has suffered physical injury in the accident, there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another." Id., 719. Recently, moreover, in Maloney v. Conroy,208 Conn. 392, 545 A.2d 1059 (1988), the supreme court specifically resolved the issue of whether a bystander may recover for CT Page 2504 negligent infliction of emotional distress in the medical malpractice context as follows:
 Whatever may be the situation in other contexts where bystander emotional disturbance claims arise, we are convinced that, with respect to such claims arising from malpractice on another person, we should return to the position we articulated in Strazza that "there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another."
Id., 402, quoting Strazza v. McKittrick, supra, 146 Conn. 719. See also Anonymous v. Hospital, 35 Conn. Sup. 112, 114 (Super. Ct. 1978) (where defendants allegedly performed a bilateral tubal ligation upon plaintiff-wife in a negligent manner, plaintiff-husband's emotional distress claim held legally insufficient, because "[t]he surgical procedure . . . was personal to the wife," and "[t]he alleged negligence of the defendants was a breach of the duty owed solely and exclusively to her, and not to her husband").
In count one and a portion of count three, the plaintiff, William Burns, seeks to recover for the "mental and emotional pain and distress" he suffered, and will continue to suffer, as a result of the defendants' negligence. The court finds that these claims constitute bystander emotional distress claims, which are not permitted in the medical malpractice context. Accordingly, the claims of William Burns for negligent infliction of emotional distress, contained in counts one and three of the amended complaint, must be — and are — stricken on this ground as well.
The defendants have moved to strike count two of the amended complaint, on the ground that the costs of raising a healthy child have not been recognized by the appellate courts of Connecticut as a compensable element of damages, under the circumstances presently before the court. In response, the plaintiffs argue that, because the supreme court of Connecticut has authorized child-rearing costs as a compensable element of damages where a child's birth results from "negligent medical care," the court should recognize child-rearing costs as a compensable element of damages under the facts of this case.
This court's research has revealed only one appellate court case in Connecticut that discusses the issue to be decided. InOchs v. Borrelli, 187 Conn. 253, 445 A.2d 883 (1982), the supreme CT Page 2505 court considered, for the first time, the issue of whether the parents of a child conceived after an unsuccessful sterilization procedure could be compensated for the costs of rearing the child when the physician who performed the procedure was found to have been negligent. In holding that such costs are recoverable, theOchs court rejected the defendants' assertion that public policy required the court "to hold that the birth of a child is always a blessing to its parents and that this benefit must, as a matter of law, totally offset concomitant financial burdens." Id., 256. Instead, the court espoused its view that:
 the better rule is to allow parents to recover for the expenses of rearing an unplanned child to majority when the child's birth results from negligent medical care. . . . [P]ublic policy cannot support an exception to tort liability when the impact of such an exception would impair the exercise of a constitutionally protected right. It is now clearly established that parents have a constitutionally protected interest located within the zone of privacy created by several fundamental constitutional guarantees; to employ contraceptive techniques to limit the size of their family.
(Citations omitted; internal quotation marks omitted.) Id., 258. Additionally, the court rejected the defendants' claims that allowing recovery of damages would erroneously equate the birth of a child with an injury to its parents, and that the damages awarded were "too speculative to be permitted," reasoning that:
 We may take judicial notice of the fact that raising a child from birth to maturity is a costly enterprise, and hence injurious, although it is an experience that abundantly recompenses most parents with intangible rewards. There can be no affront to public policy in our recognition of these costs and no inconsistency in our view that parental pleasure softens but does not eradicate economic reality. . . .
 It bears emphasis, furthermore, that the trial court did not impose upon the defendants the total burden of economic costs of the plaintiffs' parenthood. The trial court, with the plaintiffs' concurrence, instructed the jury to reduce potentially recoverable child-rearing expenses "by the value of the benefits conferred on the parents by having and raising the child. Such benefits CT Page 2506 may be the satisfaction, the fun, the joy, the companionship, and the like, which the plaintiff[s] as parents have had and will have in the rearing of the child and which make economic expenses worthwhile."
Id., 259. In effect, rather than invoking a per se rule that the benefits always outweigh costs, or costs always outweigh benefits, the court adopted the case-by-case balancing test of the Restatement (Second) of Torts. That rule provides that:
 [w]hen the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.
(Citations omitted.) Id., 259-60, quoting 4 Restatement (Second) Torts (1979) § 920. In adopting this "benefit rule," the court reasoned that:
 [a]lthough we recognize that this balancing test requires the jury to mitigate economic damages by weighing them against noneconomic factors, we reject the defendants' claim that such a weighing process is "i "impermissibly speculative." We see no basis for distinguishing this case from other tort cases in which the trier of fact fixes damages for wrongful death.
(Citations omitted.) Ochs v. Borrelli, supra, 187 Conn. 260. See also Anonymous v. Hospital, supra, 35 Conn. Sup. 115-16 (where defendants' alleged negligence in performing a bilateral tubal ligation upon woman results in birth of an unplanned, healthy child, the costs of raising said child are allowable as damages; however, the defendants may "argue in mitigation of damages the satisfaction, joy, and companionship which normal parents receive in the rearing of a child and which make economic loss worthwhile"); Anonymous v. Hospital, 33 Conn. Sup. 125, 128-29
(Super.Ct. 1976) (same).
The court disagrees with the plaintiffs' argument that theOchs v. Borrelli decision controls the present case. In Ochs v.Borrelli, supra, the malfeasance at issue constituted a sterilization procedure that had allegedly been negligently performed by the defendants. Here, in contrast, the wrongdoing at CT Page 2507 issue is composed merely of allegedly negligent advice regarding the plaintiff-wife's sterility. Additionally, in Ochs v.Borrelli, supra, the child born as a result of the defendants' negligence suffered from a minor orthopedic defect. Here, in contrast, the child born as a result of the defendants' alleged negligence is perfectly healthy. For these reasons, the court finds the present case distinguishable, on its facts, from theOchs v. Borrelli decision.
The court is unaware of any other appellate court case in Connecticut, and the plaintiffs have not directed the court to one, where a plaintiff was permitted to recover the costs of raising a child to majority, as a result of a defendant's negligence, under the facts of this case. Accordingly, the court finds that count two of the plaintiffs' amended complaint must be -and is — stricken.